## F. H. Cooper v. Winifred B. Cooper.

1.  TEMPORARY ALIMONY—*Does Not Depend on the Wife's Property.*
—Whether temporary alimony should or not be allowed does not depend upon the wife's ownership of non-income-producing property.  If the income of the wife is insufficient to maintain her and enable her to carry on her suit, and that of the husband is ample, she should be allowed from his income such sum as will, when added to her own, enable her to live comfortably, pending the litigation, in the station of life to which her husband has accustomed her.

2.  SAME—*Wife's Misconduct and Temporary Alimony.*—In fixing the amount of alimony the court may take into consideration the fact of the wife's misconduct, but that a less sum should be allowed her on that account, even when her misconduct has contributed to the separation of the parties, has no application to a motion for temporary alimony and suit money.

3.  SAME—*Court Will Not Look into the Merits on the Hearing of a Motion for Temporary Alimony.*—The court will not look into the merits on a motion for temporary alimony, but will only investigate sufficiently to determine whether the complainant's bill is exhibited in good faith.  Whether the complainant has, in fact, a meritorious case, or whether the truth in respect to the issues is on her side, can not be determined until the proof shall have been put in and a hearing had.

4.  SAME—*Resting in the Discretion of the Court.*—Whether temporary alimony should be allowed, and if so, how much, are questions resting in the judicial discretion of the court, in view of the conditions and circumstances of each case, and an abuse of such discretion is necessarily the subject of review.  Unless, however, there is clearly an abuse of the discretion, the decree will not ordinarily be disturbed on appeal.

**Order Allowing Temporary Alimony.**—Appeal from the Superior Court of Cook County; the Hon. FARLIN Q. BALL, Judge, presiding. Heard in this court at the March term, 1899.  Affirmed.  Opinion filed November 16, 1899.

S. S. PAGE and A. BINSWANGER, attorneys for appellant.

Complainant must show that she has a meritorious case before alimony *pendente lite* can be allowed.  Puterbaugh's Chancery, 639; Rawson v. Rawson, 37 Ill. App. 493; Jenkins v. Jenkins, 91 Ill. 167.

When a wife has sufficient means to maintain herself and conduct her suit, alimony *pendente lite* will not be allowed. 2 Am. & Eng. Ency. (2d Ed.), 105–6; 2 Bishop, Marriage and

Divorce, Sec. 394; Carlin v. Carlin, 65 Ill. App. 161; Porter. v. Porter, 41 Miss. 116; Kenemer v. Kenemer, 26 Ind. 330; Burgess v. Burgess, 25 Ill. App. 526; Puterbaugh's Chan- cery, 639; Harding v. Harding, 40 Ill. App. 202, 144 Ill. 594.

The court can take into consideration the circumstances of the case in fixing the amount of alimony. 2 Starr & Curtis, 2136; Harding v. Harding, 79 Ill. App. 612.

The court should give a less sum when wife's misconduct has contributed to the cause of separation. 2 Am. & Eng. Ency. (2d Ed.), 127.

The amount allowed by the court was excessive. Hard- ing v. Harding, 79 Ill. App. 612.

J. ERB, attorney for appellee.

The allowance of temporary alimony is a question which addresses itself to the judicial discretion of the chancellor. Blake v. Blake, 80 Ill. 523; Foss v. Foss, 100 Ill. 576; Bur- gess v. Burgess, 25 Ill. App. 525; Lane v. Lane, 22 Ill. App. 529; Foote v. Foote, 22 Ill. 425.

" Whether an allowance shall be made or not in the nature of temporary alimony, rests in the judicial discre- tion of the court, to be exercised in view of the conditions and circumstances of each case, and an abuse of the discre- tion is necessarily subject to review."

Unless, however, there is clearly an abuse of the discre- tion, the decree will not ordinarily be disturbed on appeal. Andrews v. Andrews, 69 Ill. 609; Ressor v. Ressor, 82 Ill. 442.

While the allowance is discretionary and subject to appeal, it is only upon a strong and decided difference of opinion that an appellate court should be disposed to dis- turb it. Foote v. Foote, 22 Ill. 425; Burgess v. Burgess, 25 Ill. App. 525.

It must be clearly shown that there has been an abuse of discretion. Lane v. Lane, 22 Ill. App. 529.

The discretion of the lower court will not be controlled, unless the amount is so excessive as to amount to an abuse of discretion. Foss v. Foss, 100 Ill. 576.

Cooper v. Cooper.

MR. JUSTICE ADAMS delivered the opinion of the court.

This is an appeal from an order allowing temporary alimony and suit money to appellee, pending a suit for separate maintenance by her against appellant, her husband. The original bill was filed October 24, 1898, and an amended bill November 17, 1898. In both the original and amended bills it is averred that August 14, 1888, the parties were married, and that October 19, 1895, appellant willfully and without cause, and without fault on the part of appellee, deserted and abandoned her, and declared he would no longer live with her; that she was living separate and apart from her husband, and that she had no property or income of her own to enable her to pay necessary living expenses and to maintain herself in a condition adapted to the station of life to which she had been accustomed. The amended bill states the circumstances under which appellee alleges the appellant abandoned her, and also acts of misconduct on the part of appellant.

It is averred in both the original and amended bills that appellant is the owner of real and personal estate of the value of, to wit, $1,500,000; and has an annual income of about $250,000.

The original and amended bills are both verified by the affidavit of appellee.

Exceptions were filed to the amended bill by appellant, which were overruled by the court, and appellant answered both bills.

Appellant, in his answers, denies that he abandoned appellee without cause, or without fault on her part, denies the charges of misconduct made in appellee's amended bill, and states the circumstances under which, October 20, 1898, he ceased to live with appellee. Appellant denies that he is the owner of property or has an income of the amounts stated in appellee's bills, or anything like said sums. Replications were filed to the answers. For reasons which will hereafter appear, we deem it unnecessary to state the pleadings more fully.

November 25, 1898, the court, on motion of appellee, and

on the bills and answers and affidavits in support of and against the motion, ordered that $600 per month be paid by appellant to appellee, as temporary alimony, the first payment to be made December 1, 1898, until the further order of the court; and that appellant should also pay, for the use of appellee, the rent of the premises, number 150 Pine street, Chicago, and of the private barn adjacent thereto, until the further order of the court, and also ordered that appellant should, forthwith, pay to appellee the sum of $1,500 as and for preliminary solicitor fees to enable her to prosecute her suit.

In appellee's affidavit in support of her motion, she states that heretofore she has been allowed by appellant, for the support and maintenance of herself and household, between $1,500 and $2,000 per month, in addition to which appellant paid the rent of the premises occupied by her and of the barn, and the wages of the coachman, for feed for the horses and all repairs and expenses pertaining to the barn; that appellant owns nearly thirty per cent of the stock of a business corporation in Chicago, known as Siegel, Cooper & Co., the capital stock of which is fixed at $1,000,000, and that he is also a large stockholder in another corporation known as Siegel-Cooper Co., doing business in the city of New York, which two corporations are doing a large business and have been accumulating annually large profits, and that appellant has received large dividends on his said stock, ranging from fifteen to fifty per cent per annum on said stock, and has been receiving a salary as vice-president of $12,000 per annum; that affiant has been reliably informed and charges, that during the last year appellant has earned in salary, dividends and undivided profits, by reason of his interest in said corporations, $500,000, and that the market value of his stock has increased, making his total earnings and profits during the last year, at a fair estimate, $750,000; that appellant has other large investments amounting to many thousands of dollars, the precise amount of which is unknown to affiant; that during the year 1893, appellant's dividend in Siegel, Cooper & Co., of Chicago, amounted to

$140,286; that he withdrew cash from said concern, during said year, $101,104.77, and has since then withdrawn from said concern other large sums each year, independent of money. drawn for living expenses and the support of affiant, which sums have been devoted to outside investments; that the amounts withdrawn by appellant for personal and household expenses have been between $40,000 and $50,000 per annum; that appellant, after he left his home, ordered his horses, carriages and other vehicles, theretofore reserved for affiant's use, removed to the barn of Siegel, Cooper & Co., and that, when notice was served on him of the present motion, he sent her a check for $500, with the announcement that he would not allow her any more, except the rent of the apartment she occupied and the rent of the barn, $25 per month; that appellant is reasonably and fairly worth $1,500,000; that affiant's available means consists of only $10,000, which yields her less than six per cent per annum; that she has a daughter by a former marriage about sixteen years old, and that all of said income is used in the education and support of said daughter, and is insufficient for said purposes, and that no part of the income from said $10,000 is available for affiant's use; that affiant received, as allowances toward her support and maintenance in the following months of the year 1898—March, $1,095; April, $500; June, $900; July, $805; August, $1,500; September, $1,000; and in addition appellant presented her with a carriage which cost $1,015; and that said allowances did not include coachman's wages, horse feed, rent of barn, rent of living apartment and other expenses, amounting in all to $200 per month; that appellant's dry-goods, dresses, and other articles of wearing apparel cost about $6,000 per annum, and her household expenses amounted to $350 per month, etc.

Appellant, in his affidavit in opposition to the motion, denies that he is possessed of property worth $1,500,000, or anything like said sum, and denies that his annual income is $250,000, or anything like said sum, and avers that he has been receiving a yearly salary of $12,000, which is the

only salary he receives; that the statement that during the last year his earnings and profits amounted to about $750,000 is absolutely untrue and a gross exaggeration; that outside of his interest in the two corporations heretofore mentioned, and his interest as stockholder in one piece of property connected with said business, he has no investment of any value to him; denies that he has received any dividend from the Siegel-Cooper Co. at any time, and avers that the allegation that he withdrew from Siegel-Cooper Co., in the year 1893, over $100,000 is untrue; avers that since the expiration of about six months from the fall of 1896, affiant has allowed $500 per month for household expenses, in addition to which, on special occasions, he presented appellee with divers sums of money, and paid the rent of the barn and of the living apartments, the salary of the coachman, and feed of horses; avers that he has five children by a former marriage, three of whom are single, and that he is at considerable expense on their account; that appellee is extravagant, etc.; that about November 1st last, he sent a check to appellee for $500; that within a week prior to October 19th last, on appellee's solicitation and her representations that she was in debt, he gave her $1,000, and that, since the suit was commenced, bills have been presented to him for debts of appellee aggregating $557.92; that the horses and carriages are his property and he had a right to remove them, but that since said removal appellee replevied and now has them; that November 5, 1898, affiant paid to appellee $11,000, money of appellee which she derived from her father's estate, and which she still has, as far as appellant is advised; that appellee has at least $15,000 worth of jewelry and silverware purchased by affiant, also a farm in Iroquois county, Illinois, worth, as affiant is advised, about $8,000, from which she receives rental; also some twenty-five or thirty town lots in the town of Sheldon, Illinois, of considerable value; also a whole or half interest in a cultivated farm of 300 acres near the city of Dallas, in Texas, of considerable value, which was purchased by affiant with his own money and

given to appellee, and from which, affiant is informed, she receives income, but the amount thereof he does not know; also that appellee owns eleven shares of West Chicago City Railway stock of the par value of $100 per share, on which she receives six per cent. dividends. Affiant denies that he announced to appellee, when he sent her, November 1st, the $500 check, that the sum would be all he would allow her for her separate support, and avers that he sent her the following letter:

"CHICAGO, Oct. 31, 1898.
MRS. WINIFRED B. COOPER, 150 Pine St., Chicago, Ill.

I enclose check for $500, your usual monthly allowance, and will continue to pay rent of flat and barn. I do this, notwithstanding your suit just begun for separate maintenance, and in doing this I do not waive any of my rights in that suit or otherwise, and deny your right to begin or sustain any such action. It is not my fault that you are living apart from me.                    F. H. COOPER."

In another affidavit filed by appellant in reply to appellee's affidavit, he denies that ever, in any year while the parties lived together, he allowed appellee, or that she expended for wearing apparel $6,000, or any sum approximating that amount, and avers that $500 per month, with house rent paid, is ample to cover all reasonable expenditure for appellee's living expenses of all kinds.

It will be observed from the affidavits that appellant does not disclose the value of his property, or the amount of his annual income, but simply denies that he is worth as much or has income as great as appellee in her sworn bill and her affidavit avers. This omission, his counsel say, was expedient for business reasons, which may be true, but the amount of his income was an essential fact in determining appellee's motion, and his omission to inform the court of that fact is certainly not a circumstance favorable to him. It is apparent that the appellant is very wealthy, and that appellee has, while living with her husband, been accustomed to having large amounts expended on her account. It is not denied that the amounts alleged by appellee to have been expended in the months heretofore mentioned in

1898, were expended by appellant as averred by appellee. Appellant's answer to appellee's affidavit, that in the year 1893 he withdrew $101,104.77 from Siegel, Cooper & Co., is a negative pregnant. He says that the allegation that he withdrew over $100,000 is untrue, impliedly admitting that he withdrew $100,000.

It appears from the affidavits that appellant provided horses and carriages for the use of appellee, which in view of appellant's means, certainly can not be said to have been unsuited to her condition in life. Appellant's own estimate of the allowance which should be made for appellee's support is but little less than that allowed by the court. In his affidavit he says that $500 per month, with house rent paid, is ample to cover all reasonable expenditures for the complainant's living expenses of all kinds. In his letter to appellee of October 31, 1898, written the seventh day after the suit was commenced, he says: "I enclose check for $500, your usual monthly allowance, and will continue to pay rent of flat and barn." The court allowed $600 per month, and the rent of the flat and barn, only $100 more than what appellant estimated would be sufficient. It would seem that in so far as the order for temporary alimony is concerned, there is but little about which to litigate.

Counsel for appellant have filed an elaborate argument, citing numerous cases, which we can not avoid thinking unnecessary, as every principle applicable to the case is announced in the very thorough, well supported and exhaustive opinion of the court in Harding v. Harding, 144 Ill. 588. The propositions of appellant's counsel are as follows:

1. Complainant must show that she has a meritorious case before alimony *pendente lite* is allowed.

2. When a wife has sufficient means to maintain herself and conduct her suit, alimony *pendente lite* will not be allowed.

3. The court can take into consideration the circumstances of the case in fixing the amount of alimony.

4. The court should give a less sum when the wife's misconduct has contributed to the cause of separation.

5.  The amount allowed by the court is excessive.

In Harding v. Harding the court say :

"The court should enter into a sufficient examination of the case to determine the good faith of the complainant in exhibiting her bill, which will ordinarily be confined to an inspection of the pleadings, of which the court may and should, if other proof be not made, require verification."

The court further say :

"The petition is verified by the oath of the complainant. This was sufficient, if the court believed her, to warrant the exercise of the discretion of the court in finding that she was proceeding in good faith."

The court further holds :

"It is no objection to the allowance being made that the husband denies what the wife alleges."

In the present case not only was appellee's bill verified by her oath, but she made a separate affidavit in support of her motion for temporary alimony, and the court evidently found that her bill was exhibited in good faith. Whether temporary alimony should or not be allowed, does not depend on the wife's ownership of non-income-producing property.  In the case cited the court held that if the income of the wife is insufficient to maintain her and enable her to carry on her suit, and that of the husband is ample, she should be allowed from her husband's income such sum as will, when added to her own, enable her to live comfortably pending the litigation in the station in life to which her husband has accustomed her.  That the court, in fixing the amount of alimony may take into consideration the circumstances of the case, is a sound proposition, but the proposition that a less sum should be given when the wife's misconduct has contributed to the separation has no application to a motion for temporary alimony and suit money.  On such motion the court will not look into the merits (2 Bishop on Marriage, Divorce, etc., Sec. 940), but will only investigate sufficiently to determine whether the complainant's bill is exhibited in good faith.  Whether the complainant has in fact a meritorious case, whether the truth in respect to the issues is on her side, can not be deter-

mined until the proof shall have been put in and a hearing had. Harding v. Harding *supra.*

Whether temporary alimony should be allowed, and if so, how much, are questions resting in the judicial discretion of the court, in view of the conditions and circumstances of each case, and an abuse of the discretion is necessarily subject to review. Unless, however, there is clearly an abuse of the discretion, the decree will not ordinarily be disturbed on appeal. Harding v. Harding, *supra.*

In the present case the wife's annual income, so far as appears from the affidavits *pro* and *con*, consists of less than six per cent on $10,000 and six per cent on the par value of $1,100 of stock, or not in excess of $660 in all, while the husband's income is ample; in view of which we deem the allowance of temporary alimony fair and reasonable.

Neither can we say that there was clearly an abuse of discretion in allowing the sum of $1,500 to complainant for solicitor's fees, or suit money, considering the issues involved, the pecuniary ability of appellant to contest the averments of the bill, and his answers, which clearly indicate that he intends so to do. In the Harding case the sum of $1,000 was allowed as solicitor's fees, and $400 additional for other expenses of suit. In the present case nothing has been allowed for expenses of suit other than solicitor's fees, and appellee may be compelled to expend, for such other expenses, some of the money awarded to her on account of solicitor's fees. The money when paid will be hers, not that of her solicitor.

The order will be affirmed.