## Fred E. R. Jones v. Grace Jones.

### Gen. No. 12,219.

1. CHANCELLOR—*when finding of, will not be disturbed on appeal.* The findings of fact by the chancellor will not be disturbed on appeal where the testimony was heard by him in open court and the witnesses appeared before him, unless such findings are clearly and palpably against the weight of the evidence.

2. ADULTERY—*what does not establish.* While adultery may be shown by circumstantial evidence, suspicious circumstances are not sufficient to establish such a charge.

3. ADULTERY—*when letters incompetent to establish.* Letters addressed to the person charged with adultery which are more or less incriminating in character are not competent evidence as tending to show adultery unless they appear as a part of a series or it is shown that they were assented to or acted upon.

4. SEPARATE MAINTENANCE—*when wife entitled to.* Where a husband has left his wife and is living apart from her, the wife is en-

titled to separate maintenance notwithstanding she may not have been without fault in the domestic difficulties which preceded the separation, where the fault of such wife was not of a character to entitle the husband to a divorce.

Separate maintenance proceeding. Appeal from the Circuit Court of Cook County; the Hon. EDWARD F. DUNNE, Judge, presiding. Heard in this court at the March term, 1905. Affirmed. Opinion filed January 4, 1906.

**Statement by the Court.** November 26, 1904, the Circuit Court of Cook county entered a final decree in a litigation between the parties to this appeal. The appellee was the original complainant below. She filed a bill for separate maintenance against her husband, the appellant, July 16, 1903, alleging that since May 12, 1902, she had lived separate and apart from her husband without her fault, and that he had left her bed on July 4, 1901, and had entirely deserted her since May 12, 1902. The appellant filed an answer to this bill November 30, 1903, denying that the appellee was living separate and apart from him without her fault, but admitting that in May, 1902, he had left his former home, where he had resided with the appellee, his wife, and gone to another house with his mother, but had taken none of the complainant's effects or property with him.

December 5, 1903, the appellant filed a cross-bill, setting out the evidence and contents of the original bill and answer, charging the appellee with adultery with one Potter during 1901, and with other persons whose names were unknown to the appellant in 1901, 1902 and 1903. A few days later he filed, by leave of court, an amendment to his answer to appellee's bill for a separate maintenance, in which amendment were made the same charges of adultery.

In pursuance of an order of court for a bill of particulars in connection with his cross-bill, the appellant also filed at the same time a statement specifying the acts of adultery charged against appellee to have been with George B. Potter between June 1 and October 15, 1901, and with a man whose name was unknown to appellant on or about January 4, 1902.

The appellant's answer to the appellee's bill for separate maintenance contained at great length details of the domestic difficulties between himself and his wife as basis for his assertion that she was not living separate and apart from him without her fault, but the ultimate issues in the cause are shown by the foregoing statement.

It appeared in evidence that the income of the appellant was $2,500 a year, which he received as salary for services in a responsible situation as an insurance manager, and that he had no children, but that his mother was dependent on him, and that he lived with her.

November 26, 1904, a chancellor in the Circuit Court, after a hearing of witnesses in open court, entered a final decree on the appellee's original bill and appellant's cross-bill. It found the equities with the complainant in the original bill (the appellee), and that she was living separate and apart from her husband without her fault. It ordered the defendant, the appellant, to pay to her each week $6 for her separate support and maintenance until the further order of the court, and each month for eight months $25 in addition for her solicitor's fees. The appellant's cross-bill was found without equity and dismissed. From this decree the appellant appealed to this court, assigning as erroneous each part of the decree.

The appellee assigned as a cross-error on the record the finding of the chancellor that $6 a week was a reasonable allowance under the evidence for her separate support and maintenance, alleging that the decree should have been for a larger sum.

DAVID L. ZOOK, for appellant.

WELLS, BOWERSOCK & STILLWELL, for appellee.

MR. JUSTICE BROWN delivered the opinion of the court.

There are almost five hundred typewritten pages in the transcript of the record in this appeal, mostly filled with the deplorable details of what was evidently a very unhappy married life of about three years.

It would be entirely useless for us to comment on the evidence at any considerable length. As to that which is conflicting in it, it is sufficient to say that the chancellor had the witnesses before him, that he had an opportunity to observe their demeanor, and to judge from their appearance and actions the credibility of their words, and that we cannot disturb his findings unless they are clearly and palpably against the weight of the evidence. A recent statement of this rule has been made thus in The Columbian Theatre Amusement Company v. Adsit et al., 211 Ill., 122–125: "The rule in chancery practice in this State is too firmly established to be now shaken or overturned, that when the chancellor sees the witnesses and hears them testify, and their evidence is conflicting, the decree entered by him will not be disturbed upon a question of fact by an appellate tribunal, unless it appears that the findings of fact are clearly and palpably wrong."

The decree in this case is based upon findings of fact, and we are asked to overturn it on questions of fact. The rule announced by the Supreme Court must clearly, therefore, control us.

Whether the allegation of adultery made against the appellee by appellant in his cross-bill and in the answer to the original bill was proven or not by the evidence, is one of the questions of fact which the chancellor was called on to decide. He decided it in favor of the appellee. We cannot say that this decision is clearly and palpably against the weight of the evidence. On the contrary, we think that any other decision would have been unwarranted. Giving to all the evidence that was offered in support of the allegation the fullest significance and credence, and inferring from it indeed all that the appellant could reasonably claim, and more, we think, than the rules of evidence would authorize, it would only prove indiscreet conduct and reprehensible frivolity—not the last and greatest offence of a married woman.

If the appellant, in the late afternoon or early evening of a day in June, did go to the extensive rabbit hutches

which her husband maintained in the rear of his house, and even to the unlighted room of their caretaker, Potter, who lived in the family, it may have been imprudent on her part, but it was not very unnatural and was very far from necessarily criminal. This must have been also the opinion of the appellant at the time, for he kept Potter in his employ for months thereafter, and apparently not until he had discovered anonymous clandestine letters from some other person in his wife's dresser, and was not unnaturally, perhaps, in that state of mind when "trifles light as air" become "confirmation strong as holy writ," did he think that these visits of his wife to the hutches or to Potter's room were the evidence of criminality.

If the testimony of Mary Robinson be given full credence, that when she and Mrs. Jones were eating candy together Potter asked for some, and to enforce his request caught Mrs. Jones in his arms and took the candy from her, it may show childish and undignified conduct, but it is not evidence of adultery. Mrs. Robinson's testimony regarding Mrs. Jones' grief at Potter's alleged stories certainly is not damaging to appellee.

If we should hold the four letters purporting to be addressed to "Billy" by "May," and found in Mrs. Jones' dresser admissible, should believe them to be to her from some man whom she knew, and should further hold them incriminating evidence against her of such matters as are alluded to in them as participated in by her, they would not prove adultery. They would prove a clandestine correspondence highly improper for a married woman to carry on, but the matters which are assumed in them are only that Mrs. Jones had returned one theatre ticket with a request that her correspondent should not bother her any more, but that her correspondent thought that repetitions of the offer and invitations to private supper rooms in public restaurants by a man not her husband, would not offend or alarm her. The general tone of the four letters produced, if her possession of them connected with the testimony concerning many other letters in the same handwriting coming to the

house addressed to her, is considered as evidence of her participation and acquiescence in the correspondence, certainly would show a want of prudence, discretion and proper appreciation of the respect due to herself and of her duty to her husband. But they do not allude to any actual meetings which had taken place in private supper rooms or elsewhere. Nothing is alluded to in them as having taken place which necessarily involves either the opportunity or the will to commit adultery. While circumstantial evidence may prove adultery, of course, suspicious circumstances merely do not. There is a wide distinction.

But there are rules of law which affect these letters as evidence which must, however natural were the husband's suspicions when he found them, or however suspicious we may regard them, prevent their being given the effect even which we have assumed in discussing them. The Supreme Court in Razor v. Razor, 149 Ill., 621, in a very similar case to the one at bar, held letters like these absolutely inadmissible. In that case a letter was found by the husband in his wife's trunk containing a proposition to meet her for improper and adulterous purposes. The letter was addressed to the wife's familiar name, and it was shown, the opinion says, "that a considerable package of letters was thus found, some entirely innocent and others more or less criminating," and insisted "that the letter excluded was one of a series and in answer to one written by the complainant, and having been found in the possession of the complainant, was therefore competent evidence." But the court said: "To this it must be said that there is in this record no evidence that it was one of a series or that it was in answer to one written by complainant other than that contained in the letter itself. This letter, if addressed to the wife and found in her possession, would not be evidence against her unless the contents had been adopted or sanctioned by some reply or statement or act done on her part shown by proof *aliunde* the letter itself. While the possession of letters of this character is wholly inconsistent with the duties and obligations of a wife, it cannot be said that her silence and reten-

tion of the letters necessarily implies assent to their contents. Where verbal communications are made, silence may authorize an inference of assent, but the same rule does not ordinarily apply to letters received but never answered or in any way acted upon."

It is not necessary to pass on the question whether the chancellor should have excluded these letters entirely, or to express our opinion as to the sufficiency or probability of the appellee's explanation of having them in her possession. It remains true, in any event, in the language of the Supreme Court just quoted, that however inconsistent with the duties and obligations of a wife her unexplained possession of the letters may be, it cannot be said that any assent to them on her part has been shown. Because of that fact their value as substantiating the charge of adultery is nothing. As the Appellate Court in the Second District said of similar letters, they are at worst only sufficient to rouse a suspicion of wrong doing, but are not proof of anything. Farrell v. Farrell, 28 Ill. App., 37.

The appellant swears that he saw the appellee once come out of the Chamber of Commerce Building at 9:34 in the evening with a man whom he did not recognize. This would be but a suspicious circumstance at best, but it is absolutely denied by appellee so far as the material factor of the time is concerned, and is uncorroborated.

The charge of adultery was, we think, rightly held by the chancellor to have been unproven, and the cross-bill fell with the failure of that charge.

But it is claimed by the appellant that whatever became of the cross-bill, the original bill should have been dismissed because the evidence failed to show that it was without the appellee's fault (as the statute giving a separate maintenance action requires) that she was living separate and apart from her husband.

The contention is not that the appellant did not leave his wife and refuse to allow her to live with him or to provide a home for her. This is admitted, but it is claimed

that he was justified by his wife's misconduct in so treating her.

We have failed to find any case where the abandonment or separation was the act of the husband, in which the Supreme Court or this Court has decided that the wife was not entitled to a separate maintenance under the statute, because of her fault in quarrels or difficulties anterior to such separation. We do not think there, is any such case. Where the wife claims that by bad conduct on the part of the husband, she has been justified in leaving him, and then sues for separate maintenance, the court will look into the differences existing before the separation, to see if her leaving her husband was necessary. If not, of course she is not without fault *in the living apart*. In considering the question whether she were justified in leaving her husband, the court will look to see whether her conduct materially contributed to produce the conditions which she claims justified her in leaving him. If it did, the court has held that her leaving was not justified, and therefore that her living apart was not "without her fault."

This is the meaning and extent of the cases cited by the appellant—Anderson v. Anderson, 45 Ill., 168, and Jenkins v. Jenkins, 104 Ill., 134, and of other cases like them which we have investigated. But the statute evidently does not mean that a wife whose husband deserts her or turns her out of his home against her will, is excused from providing a separate maintenance for her, because in the preceding domestic difficulties she has not been "without fault." It is said by the Supreme Court in Johnson v. Johnson, 125 Ill., 514, that no encouragement can be given to the living apart of husband and wife, and that slight moral obliquities even will not justify separation, and in Razor v. Razor, *supra,* although the Supreme Court said the possession of letters of the character of those found among the wife's effects was wholly inconsistent with the duties and obligations of a wife, yet it held that the letters were properly excluded from evidence in defense to her bill for separate maintenance, and affirmed the decree which granted a separate maintenance.

Jones v. Jones.

The object of the statute is stated in Ross v. Ross, 69 Ill., 569, to be "To confer jurisdiction on a court of equity to enforce the common law duty of the husband to furnish support and maintenance for the wife suitable to the condition of the parties in life, upon her application in all cases where she is living separate and apart from him without her fault, or in other words, under such circumstances as would enable her to avail herself of the common law remedy of obtaining such support upon the credit of her husband."

There can be no question in the case at bar that the appellee would be able to avail herself of this common law remedy.

Men who make such mistakes in marriage as appellant claims to have made cannot easily escape the obligations they have assumed. In certain cases they are relieved by the wife's voluntary flight from home; in others they are able to prove charges which give them a release by divorce; if they are not thus discharged from their obligations they must face them, either by bearing the domestic cross, or providing for their wives a suitable living apart.

In the present case it is quite evident that the appellant had not exhausted all remedies for the miseries of his family establishment. He might have tried the effect of a suitable provision for his mother apart from his wife. It is an old saying that no house is large enough to need two mistresses.

As for the cross-errors assigned, we should always be very reluctant to disturb the decision of the trial judge in a matter so evidently committed to his discretion and so plainly the result of a finding of facts. There is no reason for our doing so in this cause.

The decree of the Circuit Court is affirmed.

*Affirmed.*