## Florence Bowler Cash, Appellee, v. Elgin T. Cash, Appellant.

### (Three Cases Consolidated).

1. HUSBAND AND WIFE—*separate maintenance.* Defendant, the husband of a nervous woman, neglected her, stayed out late at night, and was guilty of conduct tending to intensify such nervous condition, and finally left her. *Held,* that a decree finding him to be living separate and apart from her without her fault would be affirmed.

2. HUSBAND AND WIFE—*rule as to alimony.* The ordinary rule is to allow a wife for temporary alimony about one fifth of the joint income, but the amount varies from a sum sufficient for her actual necessities to a third or even a half of the husband's income.

3. HUSBAND AND WIFE—*alimony excessive.* Where the total net value of property owned by defendant in proceedings for separate maintenance is seven thousand dollars, and his average income is eighteen hundred dollars per year, an allowance of one hundred and twenty dollars per month is excessive.

4. HUSBAND AND WIFE—*amount of solicitor's fees to be determined from evidence.* In determining an allowance for solicitor's fees in proceedings for separate maintenance, the court should consider professional opinions as to the value of the services rendered and ascertain the customary charges.

5. HUSBAND AND WIFE—*solicitor's fees.* Allowance of solicitor's fees for a wife in proceedings for separate maintenance cannot be sustained where no evidence is preserved showing what services were performed nor the value thereof.

6. HUSBAND AND WIFE—*alimony lien on real estate.* A lien may be decreed upon real estate to secure the payment of alimony, but methods may be provided in such decree by which the lien can be released in case of sale.

Appeal from the Circuit Court of St. Clair county; the Hon. GEORGE A. CROW, Judge, presiding. Heard in this court at the October term, 1912. Affirmed in part, reversed in part and remanded with directions. Opinion filed March 10, 1913.

D. J. SULLIVAN, for appellant.

KRAMER, KRAMER & CAMPBELL, for appellee.

MR. PRESIDING JUSTICE MCBRIDE delivered the opinion of the court.

The above entitled causes grow out of the same subject-matter and were tried upon the same evidence and facts, were argued as one case in this court and suggested by counsel that they be disposed of in one opinion. This court, after having considered the matters involved, has decided to dispose of all three of the cases in one opinion.

The original case, Term No. 30, was a suit filed by appellee for separate maintenance, alleging that appellant and appellee were husband and wife, and that the appellee as such wife was living separate and apart from her husband, the appellant, without her fault and asking that appellant might be compelled to make a proper and suitable provision for her separate maintenance and support. A decree was rendered for the appellee in this cause finding the allegations of her bill to be true and that she was entitled to separate maintenance from the appellant. The decree also provided that the appellant pay to appellee $75 as solicitor's fees, which was immediately paid in open court, and that the appellant pay to the appellee $120 per month, and the further sum of $50 as solicitor's fees. The appellant prosecuted an appeal from this decree and thereafter the appellee filed suit designated by Term No. 31, asking an order for a sufficient amount to enable her to pay solicitor's fees and other expenses attending the appeal, upon which application the Circuit Court, on May 27, 1912, made a further order requiring the appellant to pay to appellee the sum of $100 for suit money and solicitor's fees for such appeal, and the further sum of $120 per month during the pendency of such appeal; but it was further provided that if the appeal should be determined at the March Term of the Appellate Court that then full credit shall be given for the additional $120 per month upon the original allowance. From this decree the appellant also prosecuted an appeal. Thereafter the

appellee filed a further application to the Circuit Court asking a further sum for solicitor's fees and suit money to defend such appeal, which is above designated as Term No. 32, and on July 29, 1912, a further order was entered in said court requiring appellant to pay to appellee the further sum of $100 for solicitor's fees and expenses in defending the appeal last referred to, and the further sum of $100 per month until the final determination of said appeal but that all money paid under this order, except the sum of $100 for solicitor's fees should be credited upon the amount awarded upon the original decree, and from this order the appellant also prosecuted an appeal.

The first and second errors assigned by counsel for appellant, for the reversal of these cases, present the question of the right of the Circuit Court to grant the decree of separate maintenance rendered herein.

While the evidence in this case discloses that the appellee was at times very nervous, bordering on to hysteria and at such times by reason of such nervousness or jealousy, or both, annoyed and nagged at the appellant unnecessarily causing him to lose his rest, said unpleasant things to him and was doubtless indiscreet in her persistent inquiry as to his whereabouts when out late at night, and probably without conclusive evidence as to his association with other women, at times, unjustly accused him of such association and was guilty of much imprudent conduct; yet it also appears from this record that the appellant was indifferent and cold towards his wife, constantly indulged in staying out late at night and when asked to explain why out so late refused to give her any satisfaction whatever; refused at times, without any apparent reason, to take his wife automobile riding when she especially requested him so to do and at the same time was on several occasions seen riding with other women and whether the occasions of such rides were proper or improper it was calculated to intensify the nervous condition of his wife. It appears to us that instead

of endeavoring to allay the jealous and nervous condition of his wife, which he must have known existed, he neglected her and did such things as he certainly knew were calculated to make her condition worse, and at last under a pretense of going away temporarily, left her and then wrote her a letter from Kansas City stating to her that their lives have led in different directions and that he would regret to go through his entire life with the ever existing unpleasant feeling that has been prevalent for so long; and further suggesting to her that she would be better off with herself free and hoped that the future would give them more pleasant things than they had enjoyed in the past, and concluded the letter by suggesting that he would make her an allowance. From this letter it is clear to our minds that he had concluded not to live with his wife any longer and that he sought to get rid of her in the easiest manner possible.

We are not able to say from this record that the trial court who heard the evidence, saw the witnesses upon the stand, was more able to perceive the motives and conduct of the parties and other witnesses, was not warranted in finding that the appellee was living separate and apart from the appellant, without her fault, and we are not disposed to disturb this decree on that account.

The third objection urged is that the allowance made to the appellee is excessive.

For the purpose of showing the property of which the appellant was possessed, and his earnings, the appellee placed appellant upon the witness stand and seems to rely largely upon his testimony as to such property and income. As we read this record the appellant owned a place called Park Place Lots, worth about $1,000; a fifty foot lot in Weiman place worth $1,600, with a mortgage of $500; two lots in Altenberg's Addition worth about $3,000 with a $1,500 mortgage thereon; a piece of property in the Claremont Addition worth $5,000 with a mortgage for $3,600

thereon, and a lot in the McKinley Place worth $400; and that he also owns a one-fourth interest in 140 acres of ground, the reasonable value of which, as we believe the preponderance of the evidence shows, is from $125 to $150 per acre, but this land is subject to a mortgage of $10,000 and Mr. Cash's net interest in this land would be of the value of about $2,000; making the total net value of property owned by him of about $7,000.

It is further disclosed by this record that the appellant is connected with the firm of A. T. Cash & Company, engaged in the commission business of buying and selling stock at East St. Louis. That the amount of business transacted by this Company is quite extensive and that during the years 1907 and 1908, Mr. Cash realized some $8,000 or $9,000; $3,000 of which was lost in wheat deal and the remainder of it was from time to time drawn upon and used by appellant in living and otherwise.

It further appears that in 1911, the appellant's income from his business was about $1,800; the year before some less and the months of January and February of this year show considerable less. While it appears from this evidence that the appellant's firm was doing an enormous amount of business, yet it further develops that a great deal of this business was transacted upon a very small profit, as it is shown that car loads of hogs were bought by this firm and paid for at a commission of five dollars per car, so that it seems the profits of the business were rather uncertain and at times small. It appears to us that the evidence in this record discloses that the fair income of this appellant is not to exceed $1,800 per year. It also appears from the testimony of the agent of appellant, who rents the real estate and looks after it, that it takes the whole of the income from the real property to pay repairs, taxes and interest. Some stress is laid upon the fact that the appellant was given notice to produce his books showing the business transactions

for some years back, but that such books were not pro-
duced and as a reason therefor he stated that at the
end of each year for several years last past they made
a settlement and then the books that they kept, which
were mere memoranda, were destroyed, but also stated
that the same things were shown by their bank book,
which was produced and inspected by counsel for ap-
pellee in the trial of the case. While we think it is not
a very business-like way, to destroy books at the close
of the year's transactions, yet as it appears these same
items were kept in a bank book we do not feel warranted
in going outside of the record under such circumstances
in determining the amount that appellant should pay
to appellee for separate maintenance. It does not ap-
pear from this record that the appellee has any sep-
arate income, or that any necessity exists for any un-
usual expenditures of money by her. It is true there
is no inflexible rule by which the amount of alimony
allowed can be fixed but it must be determined by the
circumstances in each case. It is said, however, by our
Supreme Court, in the case of *Harding v. Harding,* 144
Ill. 599, quoting Bishop with approval that, " ' 'The
ordinary rule of temporary alimony is to allow the
wife about one-fifth of the joint income, deducting of
course the income from the wife's separate estate in
the way already explained. This is regarded as a fair
medium, though the proportion will vary, as we have
seen, according to circumstances.' * * * In a large
number of reported cases falling under our observa-
tion the rule above laid down has been recognized and
substantially followed. * * * However, the amount
allowed by the courts is by no means uniformly in the
proportion indicated by the text-writers. It will be
found that it varies from a sum sufficient to meet the
actual wants and necessities of the wife in some cases,
to a third or even a half of the income of the husband.''
We do not believe that the Circuit Court was war-
ranted, from the evidence in this case, in allowing the
appellee $120 per month alimony; we think it is ex-

cessive. The facts as shown here would not justify alimony exceeding $50 to $75 per month.

The next contention of appellant is that solicitor's fees were allowed without any evidence whatever tending to show the reasonable value of such services. It is contended by counsel for appellee that the court had the right to fix the fees which would be determined by the amount of services rendered and the pleadings as it was observed by the court, and several cases have been referred to in which it is° mentioned that the court fixed the fees but it does not appear from any of these cases whether the court heard evidence or not. We think the better rule is laid down in the case of *Metheny v. Bohn*, 164 Ill. 495, no allowance of a solicitor's fee can be sustained where no evidence showing what services the solicitor performed, or the value thereof, is preserved in the record.

Where large sums are allowed and the rights of litigants affected thereby the evidence should be preserved so as to permit the decree to be reviewed. *Goodwillie v. Millimann*, 56 Ill. 523. While it is true the judge would not be governed solely by opinions of the attorneys as to the value of such services, as he has some skill and knowledge as to such matters, yet he should no doubt take into consideration the opinion of such witnesses in arriving at his conclusion, and in fixing the fee the court's attention should be directed as to what is customary for such services. *Goodwillie v. Millimann, supra.* This case was followed in the case of *Glynn v. Glynn*, 139 Ill. App. 185, which was a suit for separate maintenance. We think it proper for the Circuit Court upon discovering that an appeal has been prosecuted to allow the appellee a reasonable amount to pay her solicitor, and other expenses attending such appeal but we regard the third suit, designated as Term No. 32, as wholly unauthorized and the allowance therein fixed was an unnecessary burden upon the appellant. The court should in this case hear evidence as to the value of the services rendered in the

circuit and appellate courts and then make its order allowing a sufficient amount to cover such services and expenses.

Again, it is claimed by counsel that the court erred in making the decree a lien upon the defendant's real estate because it was encumbered. It may be that a decree made a lien upon the encumbered real estate might result in prejudicing the interests of the appellant in case of a sale, but we can see no way of securing such an allowance as may be made except by making it a lien upon the real estate, but we think the Circuit Court could very properly provide in the decree methods by which in case of a sale of any of such real estate the same could be released from this lien.

We think the court was fully warranted in decreeing that appellee was living separate and apart from the appellant without her fault and that the decree to that extent should be affirmed, but we think the court erred in allowing the sums mentioned in the decree as alimony, under the evidence contained in this record; and also in allowing the amount for solicitor's fees without ascertaining what such services would be worth. As to the amount of alimony allowed and solicitor's fees the decree will be reversed and cause remanded with directions to the Circuit Court to hear further evidence, if desired by either of the parties, upon the question of the property of the appellant, his income or other matters that might pertain to the fixing of the amount to be allowed for appellee's support and maintenance, and also to hear evidence as to the value of the services rendered and the usual and customary charges for solicitor's fees in trying such cases, together with the appeal, and the necessary expense incurred by her in the prosecution of such suits. *Decree affirmed in part, reversed in part, and remanded with directions.*