Augusta Bush, Appellee, v. Frank Bush; Appellant.

Gen. No. 9,350.

Heard in this court at the October term, 1942.
Opinion filed November 4, 1942.

JAMES S. BALDWIN, of Decatur, for appellant.

JAMES E. HENSON and ROBERT N. PATTERSON, both of Decatur, for appellee.

MR. PRESIDING JUSTICE RIESS delivered the opinion of the court.

Defendant Frank Bush has appealed to this court from certain decretal orders of the circuit court of Macon county, entering judgment against him for nonpayment of the amount found to be due under the terms of a decree for alimony *pendente lite* and granting prayer of complaint for separate maintenance, solicitor's fees and costs to the plaintiff appellee, Augusta Bush, on final hearing of said cause.

Plaintiff appellee, Augusta Bush, had filed suit in equity in the circuit court of said county, against said defendant appellant, Frank Bush, her husband, seeking a decree for separate maintenance for herself and incompetent daughter, Esther Bush, aged 22 years, then residing with the plaintiff in the city of Decatur. The complaint in substance alleged the lawful marriage of the parties in 1908 and the subsequent birth of four children, all of whom are of age; that during the five years preceding the suit, defendant pursued a morose, hostile and wrongful course of conduct toward plaintiff; that on three specific occasions set forth in the complaint in April, May and July, 1939, the defendant struck, beat and bruised plaintiff with his fists, without reason or provocation, and on July 12, 1939, removed their household furnishings in a van without plaintiff's previous knowledge or consent and against her will, from their home which was then located adjacent to a tavern operated by them near Decatur, to a certain dwelling house in Decatur, and thereafter lived separate and apart from plaintiff and said daughter without fault of plaintiff; that defendant paid one month's rent of $22.50 for the newly rented dwelling house; that plaintiff's sole income was the rental of $36 per month from property owned by her and that defendant was able-bodied and received income of $2,000 a year from the U. S. Government for trucking mails to and from the post office and railway stations in Decatur, and also received certain income from rentals and management of the above tavern and adjacent residence. The complaint prayed for a decree of separate maintenance for herself and incompetent daughter and for allowance of solicitor's fees and costs.

Defendant, in his answer, denied the acts of neglect and cruelty alleged; denied that plaintiff had done the family cooking and cared for their home or assisted in

working in the tavern as alleged and averred that she had failed and neglected so to do or perform other marital duties; that she was high-tempered and quarrelsome, had attacked and made threats to poison him and that their separation was due to her misconduct.

A verified petition for temporary alimony was also filed by plaintiff, and upon hearing of the latter on July 16, 1939, a decree was entered ordering the defendant to pay to the plaintiff until further order of court, the sum of $40 per month and $22.50 to cover rental of dwelling house to which they had been removed by defendant, together with $25 solicitor's fees; the order reading for the support of plaintiff and "two" daughters—another daughter then living at home and of age was subsequently married. For default in making such payments, defendant was thereafter cited into court on two occasions to show cause why he should not be punished for contempt of court for such failure. At the first hearing, he was found to be in arrears in the sum of $342.50 and paid same on March 13, 1940. Later, he was again found and decreed to be delinquent in the accrued sum of $320 due to November 7, 1940, but was purged of wilful contempt for such failure, and on his petition therefor, the future payments of temporary alimony were reduced by the chancellor then presiding to whom the defendant had taken the cause by change of venue, to $20 per month plus amount of said rental payments of $22.50 per month, viz: $42.50. Judgment was entered for the $320 conceded to be in arrears, which defendant had asked to be remitted, this motion being denied. On December 31, 1941, the cause having been heard on its merits on December 10th and taken under advisement, a decree for separate maintenance was entered as prayed and defendant was ordered to pay $20 per month and said $22.50 dwelling house rentals being a total of $42.50 until further order of court and to pay $125 solicitor's fees in $15 monthly instalments and

costs of suit; the solicitor's fees were to be paid to plaintiff's counsel.

Upon appeal from said orders, defendant has assigned reversible error in entry of an order for temporary alimony, in finding lawfully due and unpaid thereunder the sum of $320 and entering judgment against defendant therefor, in the admission and exclusion of certain testimony, in overruling defendant's motions to dismiss the suit for want of equity and in entering decree for separate maintenance and solicitor's fees and costs.

Proof of the material allegations of plaintiff's complaint concerning her treatment by defendant and of her own conduct prior to July 12, 1939 was offered by plaintiff and certain corroborating witnesses and was denied by defendant and his witnesses. On this sharp conflict in the testimony as to the conduct of the respective parties, as alleged or denied in the pleadings, the court found the issues in favor of the plaintiff and that the parties were living apart through no fault on the part of plaintiff; that the plaintiff had properly conducted herself as the wife of the defendant; that defendant is a strong, healthy man, well able and capable of supporting plaintiff and said daughter Esther, as prayed in petition and is now employed in gainful occupation, as recited in the evidence and decree of the lower court. The record clearly shows that the defendant moved the plaintiff to a separate house and continued to live apart from her thereafter.

Considerable testimony was heard as to the income of defendant, the several changes in title to the tavern property and the conduct, income and expenses of such business, and also concerning the $275 per month conceded to have been regularly paid to the defendant under his contract for carrying mail, and the incidental expense of procuring and operating mail trucks, which tended on behalf of defendant to show that the expenses thereof exceeded the income. There was some

conflict in relation thereto by testimony of the former partner of defendant under the mail contract and some discrepancy as to certain expenditures. Among credits so claimed by the defendant was $10 per week and certain additional incidentals for his own support while maintaining himself separate and apart from his family, which exceeded in amount the $42.50 monthly allowance of the court toward the support of his family. The daughter Esther was shown to have previously been an inmate of the Lincoln State School for feeble-minded persons and was found by the chancellor to be unable to contribute to her own support and to be dependent on her parents for support and maintenance. The defendant testified concerning the removal of his family that (Abst. of Rec. 75) "I did not kick them out, I moved them out. I have not invited them back. I am not willing to move the Prells out and have my wife and daughter live with me. I do not want them around. I supported them up to now. I supported them because the court forced on me." From the whole of the evidence, the chancellor below who heard the cause upon its merits was in a better position than the court of review to observe the witnesses, their demeanor on the stand, their bias or prejudices, if any, and the probative value, reasonableness and weight of their testimony in so far as the same was conflicting, and to pass upon their respective contentions in relation thereto. *Johnson v. Johnson,* 125 Ill. 510, 16 N. E. 891. Whether temporary alimony should be allowed, and, if so, how much, are questions resting in the sound judicial discretion of the trial court in view of the conditions and circumstances of each case, and an abuse of the discretion is necessarily subject to review. Unless, however, there is clearly an abuse of the discretion, the decree will not ordinarily be disturbed on appeal. *Cooper v. Cooper,* 185 Ill. 163, 56 N. E. 1059; *Harding v. Harding,* 144 Ill. 588, 32 N. E. 206. In fixing the amount of the temporary ali-

mony to be allowed pending the suit, it is aptly said in *McAdams v. McAdams*, 267 Ill. App. 124, at page 129, that "We think the cases establish that where the suit of the wife is prosecuted in good faith, the amount of alimony to be allowed pending the suit shall be controlled, first, by the necessities of the wife as shown by the circumstances, and second, by the financial ability of the husband to make the necessary contribution to the end that in the prosecution of her suit she shall be placed upon an equality with him. That the amount is not limited solely by the income, but that the amount of property possessed may be taken into consideration, see *Low v. Low*, 133 Ill. App. 613; and that this court upon review will refuse to set aside the order of the chancellor, except for abuse of discretion, see *Harding v. Harding*, 144 Ill. 588; *Cooper v. Cooper*, 185 Ill. 163; *Low v. Low, supra;* and *Longhi v. Longhi*, 193 Ill. App. 21."

Both the complaint and the petition for temporary alimony prayed for an allowance for the separate maintenance of the plaintiff wife and for the support of the daughter Esther, whose incapacity to support herself was expressly set forth, and also asked for money and solicitor's fees "according to the statute in such case made and provided." No prayer was made for the support of the second daughter. In the examination of plaintiff, she was questioned by her counsel as to how much she deemed necessary for the support of herself and two children. She stated that her grocery bill ran $9 per week—and later—about $10 per week, which was exclusive of light, fuel, clothing and the other mentioned expenses necessary to conduct her separate household. It also appears that the second daughter, subsequently married, had prior thereto contributed toward expenses of the household. The plaintiff also used her $36 or $38 per month, rental income, less certain expenses incident thereto, toward the maintenance of the dwelling house to which defend-

ant had removed his family. While the order for the allowance of temporary alimony referred to the plaintiff and their "two" daughters, and provided an allowance of $40 per month and for payment of the dwelling house rent, such house rent was in any event a fixed sum which had been arranged for in advance by the defendant. The additional allowance of $40 per month, when considered in the light of the facts and circumstances appearing in the testimony, the condition and necessities of the wife and feeble-minded child and the financial status and income of the respective parties, was in our opinion neither contrary to the manifest weight of the evidence nor an abuse of the chancellor's discretionary powers under the terms and provisions of the cited statutes. Defendant, partly in compliance with said order, and partly after citation for alleged contempt, paid all of said amounts accruing from date of the order on July 16, 1939 to November 7, 1940, except $320 which was found and adjudged to be in arrears at that time. We hold that the use of the word "two" in the decree in view of the pleadings, was a harmless error and did not adversely affect the substantial rights of the defendant under the evidence heard by the chancellor. A court of review will not disturb a decree disposing of a matter of alimony unless it is manifest that injustice and injury have been done as between the parties. *Craig v. Craig,* 163 Ill. 176, 45 N. E. 153. The amount of $320 was conceded to remain unpaid under the provisions of the temporary decree which was binding on the parties until the same was modified and the right of the plaintiff to such accrued amount was a vested right, not affected by subsequent modification of the decree. The chancellor below properly held the same to be so due and payable to the plaintiff and properly entered judgment therefor. In so doing, no error was committed. Alimony past due under a decree is a vested debt, and

cannot be set aside nor can payment of amount past due thereunder be changed by a subsequent order of court. *Craig v. Craig, supra; Cooper v. Cooper, supra; McAdams v. McAdams,* 267 Ill. App. 124; *Herrick v. Herrick,* 319 Ill. 146, 149 N. E. 820.

The purpose of the separate maintenance statute seems to have been to grant to married women living separate and apart from their husbands without fault an action in equity which would remedy the defects of the common law in that regard. *McAdams v. McAdams, supra; Ross v. Ross,* 177 Ill. App. 542. The present Illinois Statute also accords that legal right to the husband. Section 22 of chapter 68 of the Ill. Rev. Stat. [Jones Ill. Stats. Ann. 109.189], provides in part as follows: ''That married men or women, who without their fault, now live or hereafter may live separate and apart from their wives or husbands, may have their remedy in equity, in their own names, respectively, against their said wives or husbands in the circuit court of the county where the wife or husband resides, for a reasonable support and maintenance while they so live or have so lived separate and apart; and in determining the amount to be allowed, the court shall have reference to the condition in life of the parties at the place of residence of the wife or husband, and the circumstances of the respective cases; and the court at any time after service of summons and proper notice to the wife or the husband may make such allowance of temporary alimony, attorney's fees and suit money as may appear just and equitable, as in in cases of divorce,''—. The ''fault'' referred to in the statute does not necessarily require that the complaining party be ''wholly blameless,'' but consists either in a voluntary separation, or such failure of duty or misconduct as materially contributed to a disruption of the marital relation. *Johnson v. Johnson, supra; McCarthy v. McCarthy,* 219 Ill. App. 369;

*Decker v. Decker*, 279 Ill. 300, 116 N. E. 688; *Bielby v. Bielby*, 333 Ill. 478, 165 N. E. 231; *Amberson v. Amberson*, 349 Ill. 249, 181 N. E. 825.

Finally, it is insisted that the decree is erroneous in that it orders payment of certain sums including solicitor's fees to the plaintiff's solicitor named in the decree. This contention is well taken. The law requires the decree to make such payments direct to the interested party and not to his or her counsel. *Anderson v. Steger*, 173 Ill. 112, 50 N. E. 665; *Low v. Low, supra*. In the latter case a decree for separate maintenance and solicitor's fees was granted to plaintiff, which contained a clause ordering that the solicitor's fees be paid to the plaintiff's solicitors for the plaintiff. Such order was reversed as to said provision only and such words were stricken as surplusage by this court and the order with such words deleted, was affirmed. Here, as there, quoting ''We have no doubt of our right to affirm this order except as to the objectionable provisions, and to reverse those provisions only. This we shall do.'' The court concluded ''The order is reversed as to the provisions contained in these words only. With these words stricken out, the order will stand affirmed.'' Specific statutory authority for the correction of such orders by courts of review is contained in the provisions of section 92 of the Civil Practice Act (Smith-Hurd's Ann. Stats., ch. 110, par. 216, subpar. (1) (f) and subpar. (1) (f) of sec. 216, ch. 110, Ill. Rev. Stat. [Jones Ill. Stats. Ann. 104.092]) which reads as follows: ''(1) In all appeals the reviewing court may, in its discretion, and on such terms as it deems just,—(f) Give any judgment and make any order which ought to have been given or made, and make such other and further orders and grant such relief, including a remandment, a partial reversal, the order of a partial new trial, the entry of a remittitur, or the issuance of execution, as the case may require.''

In the instant case, wherein the material issues of fact and the evidence was conflicting, the case was sharply contested. We have carefully considered the very able and earnest contentions and the analysis of law and facts presented by appellant's counsel. We have not discussed all of such contentions and assignments of error but have fully considered the same and we hold that no prejudicial error appears in the record and that the decrees and orders of the trial court appealed from herein should be and are affirmed in all respects except as to the following surplus words and language contained in the provisions and paragraph of the final decree ordering payment of $42.50 per month by defendant to plaintiff until further order of court, which surplus words and language reads as follows: "James E. Henson for the use of" and also the further surplus words and the repetitious language appearing therein, *viz:* "for the period of six months, after which the defendant is ordered to pay direct to the plaintiff the sum of Forty-two 50/100 ($42.50) Dollars per month for each and every calender month thereafter" which said surplus words and provisions so above set forth are reversed and stricken from the provisions of said decree. It is further ordered that from the paragraph and provisions of said final decree ordering payment of $125 solicitor's fees by defendant to plaintiff, the following words and provision, to-wit: "James E. Henson, attorney for" is so reversed and stricken from said decree. It is further ordered that said decree, except as to said words and provisions so reversed and stricken therefrom, shall stand and that the same, together with all other decretal orders appealed from, are affirmed by this court.

*Affirmed in part, reversed in part.*