MARJORIE GLOVER, Plaintiff-Appellee, *v.* HENRY GLOVER, Defendant-Appellant.

(No. 11289;

Fourth District—March 25, 1971.

Glenn & Logue, of Mattoon, (Ralph D. Glenn, of counsel,) for appellant.

Owen, Roberts, Susler & Taylor, of Decatur, (Robert D. Owen, of counsel,) for appellee.

Mr. JUSTICE CRAVEN delivered the opinion of the court:

This appeal is from a decree for separate maintenance granted Marjorie Glover, wife of Henry Glover, awarding her custody of the couple's four children and ordering him to pay separate maintenance of $450 per month and child support of $200 per month for each child, mortgage and insurance payments, taxes on the former marital residence and plaintiff-wife's attorney fees.

The husband appeals, contending the decree granting his wife separate maintenance was against the manifest weight of the evidence and that the amount awarded was excessive, unwarranted and against the manifest weight of the evidence.

The parties were married in Las Vegas, Nevada, on November 11, 1952. Four boys were born of the marriage, who, at the time of the decree, were aged 17, 16, 15 and 13 years, respectively. The first child was born in April of 1953. The husband is a doctor, specializing in pathology. During the marriage, defendant-husband had engaged in his profession in California, Massachusetts and Virginia, and had settled in practice in Mattoon, Illinois.

The parties had lived together during all of their marriage until their present separation in mid-August, 1967, except for a short period when plaintiff returned to her home in Indiana for approximately six weeks as a result of a nervous condition requiring psychiatric treatment. Immediately prior to that time, she threatened to kill the children. In mid-August, 1967, the husband left the marital home and did not return there to live.

On October 26, 1967, plaintiff filed her complaint for separate maintenance, alleging defendant "wilfully deserted and absented himself from the Plaintiff at the marital home, without any reasonable cause and he still continues in said desertion." Defendant filed a denial answer. At the time of filing the complaint, plaintiff filed a petition for temporary relief.

Pursuant to agreement of the parties, a decree for temporary support was entered November 21, 1967, providing temporary custody by plaintiff of the children with rights in defendant of reasonable visitation of them; temporary support to plaintiff by defendant, paying all bills incurred by plaintiff from the date of separation to November 21, 1967,

paying the mortgage payments, insurance and taxes on the marital home, and paying as temporary support $200 for plaintiff and $200 for each child per month, or a total of $1,000 per month for three months, and $1,250 per month thereafter until further order of the court.

On November 6, 1969, the court, after hearing evidence, entered the present order. This order awarded custody of the children to plaintiff, subject to right of defendant for reasonable visitation; awarded plaintiff for her support $450 per month, and ordered defendant to pay support for the children of $200 per month for each child, or a total of $1,250 per month; and ordered defendant to make the mortgage payments and pay insurance and taxes on the marital home which was in joint tenancy. It also provided that plaintiff transfer to defendant her equity in a lake cabin owned by both to assist defendant in meeting the requirements of the decree. It further ordered defendant to pay plaintiff $3,000 for her attorney fees and expenses.

Post-trial motion to vacate the decree or alternatively to modify it as to the amount of support was denied.

Since 1959, and at the time of the separation, defendant was employed by the Mattoon Memorial Hospital and the Charleston Memorial Hospital in Coles County, Illinois, where he performed duties as pathologist and doctor in charge of the laboratories. His earnings at this position for 1967 approximated $90,000. Before the separation and during 1967, the Mattoon Hospital sued Dr. Glover over an interpretation of his contract of employment, which suit was pending at the time of separation and until January, 1969, when it was settled.

After entry of the temporary support order, Dr. Glover terminated his employment with the Mattoon and Charleston Hospitals. His reasons given for termination of employment were—the suit against him by the hospital, difficulties encountered by him with the Mattoon Hospital in operation of the laboratory since the control of funds was with the hospital, general lack of cooperation, and the deteriorating marital situation.

In April, 1968, defendant accepted employment at St. Clare's Hospital in New York City at a salary of $35,000 per year. He had other income. This was his place of employment and salary at the time of the hearing of this case on its merits. After the decree, defendant filed a petition to modify the amount of support based upon the decrease in his net income. This petition was denied October 28, 1968.

The testimony of both parties discloses a marital background with problems from the outset of the marriage. Marjorie Glover was Catholic. Dr. Glover was of the Jewish faith. The parties were married in Las Vegas, Nevada, in a civil ceremony. Prior to the marriage, they discussed the question of religious instructions. Dr. Glover told Marjorie he didn't

believe in any faith or established religion but that his views of life were generally consistent with his approach to work, using a scientific approach of reason rather than faith.

The first child was conceived prior to the marriage. The parties, from time to time, differed drastically over the subject of religion and rearing of the children. The wife suffered mental strain and became gravely troubled over religion and the short intervals between bearing her children. In Los Angeles, she threatened to kill the children and required and was given psychiatric treatment.

At the time of the marriage, defendant was an intern at Lebanon Hospital in Los Angeles, California, where he remained an additional year. Then the parties spent two years in Boston, two years at Duke University, one year at the University of Virginia Hospital, one and a half years in practice in Los Angeles, and settled in Mattoon, where Dr. Glover was employed in the hospitals.

At the beginning of his employment in Mattoon, Dr. Glover worked long hours to organize the laboratory. He received thirty-five per cent of the gross income of the laboratory with a later maximum base of $200,000 of income. At the Charleston laboratory, he received a straight twenty-five per cent of the gross income of the laboratory. At the outset, his total income was approximately $30,000 and at termination he received annually approximately $66,000 from the Mattoon Hospital and $30,000 from the Charleston Hospital. This gross income of $96,174.52 was reduced by depreciation to $89,303.23 for the year 1967.

Dr. Glover testified that his annual expenses were: Support items— $15,000 support payments; $3,600 home mortgage payments; $651.23 real estate taxes on home; $1,290.60 mortgage payments on cabin; $238.50 real estate taxes on cabin; $263 insurance on home and cabin; $141.18 personal property taxes; and $180.10 mortgage guarantee policy payment; or a total of $21,364.61. His personal expenses for 1968, exclusive of Federal and Illinois State income taxes, was something over $19,000.

The doctor testified that the cabin was worth $25,000 with a mortgage of $13,362.42; the home in Mattoon had $65,000 or more invested in it and was of a present sale value of $60,000. He has an irrevocable trust fund consisting of stocks of about $13,000 in the children's names for their education. This fund produced annual income of $880 for 1968. He received a commodity income in 1968 of $6,000 on a $5,000 capital investment, which income he did not expect to recur as the account was being closed. He also received a settlement, in 1968, of the dispute with Mattoon Hospital in the amount of $21,000, which would not recur.

At the time of the hearing on the motion to vacate the decree and reduce the support payments. Dr. Glover testified that he planned to

leave St. Clare's Hospital in New York and take a position at Englewood Hospital in New Jersey. His salary there would be virtually the same, namely, $35,000, which represents the usual starting salary for this type of position. However, it would be reduced by the cost of medical and hospital coverage. He stated that his reason for changing his position to Englewood Hospital was his personal reaction to the business there.

There is no question but that the testimony of both Dr. and Mrs. Glover showed there was bickering and unhappiness in the home. There was a serious philosophical and religious difference between husband and wife. Some contradictory evidence as to attempts at reconciliation was presented. The evidence is clear, however, that Dr. Glover left his family and separated from them.

■■ The purpose of the separate maintenance statute (Ill. Rev. Stat. 1967, ch. 68, par. 22) is to grant to married women living separate and apart from their husbands an action in equity which would remedy the defects of the common law in that regard. *McAdams v. McAdams*, 267 Ill.App. 124; *Bush v. Bush* (3rd Dist. 1942), 316 Ill.App. 295, 44 N.E.2d 767.

■■■ The "fault" referred to in the statute regarding separate maintenance does not require that the complaining party in a separate action be wholly blameless. To be a bar, such conduct must consist either of a consent to a mutual separation or such a failure of duty or misconduct as materially contributes to the disruption of the marital relation. *Bush v. Bush, supra; Johnson v. Johnson*, 125 Ill. 510, 16 N.E. 891; *Decker v. Decker* (1917), 279 Ill. 300, 116 N.E. 688; *Amberson v. Amberson* (1932), 349 Ill. 249, 181 N.E. 825.

Each marriage relation presents different problems and different personalities, so that no definite rule of conduct can be stated which would suit each particular case, as what might be a "leaving without fault" in one case might be unjustifiable conduct in another. *Amberson v. Amberson*, 349 Ill. at 253.

■■ Under the evidence here presented, it was not error for the court to enter a decree of separate maintenance. Dr. Glover left his wife and family. She did not consent to the separation. She requested that he come back or take the family to New York with him. Her conduct and the differences between them as to philosophy, religion and life in general do not present fault on her part as would bar her obtaining a decree for separate maintenance. (*Jones v. Jones* (1st Dist. 1906), 124 Ill.App. 201; *Cash v. Cash* (4th Dist. 1913), 180 Ill.App. 31.) The decree was not against the manifest weight of the evidence, but was fully supported by the evidence.

■■ In determining the amount of the award for support, the statute

provides that the court shall consider the condition in life of the parties at the place of marital residence and the circumstances of the respective cases. (Ill. Rev. Stat. 1967, ch. 68, par. 22.) Whether temporary alimony and child support should be allowed and the amount, generally, is a matter in the discretion of the trial court in view of the conditions and circumstances of each case. An abuse of discretion always is subject to review. Unless, however, there is clearly an abuse of discretion, the decree will not be disturbed on review. *Bush v. Bush, supra; Harding v. Harding* (1892), 144 Ill. 588, 32 N.E. 206; *Richheimer v. Richheimer* (1st Dist. 1965), 59 Ill.App.2d 354, 208 N.E.2d 346.

■■■ The setting of an amount of alimony or child support on a petition for temporary alimony or support is not conclusive of the awards which should be made at the time of the final decree. The court must determine the amount of the final award from all of the evidence and consider the needs of the wife and children with relation to the husband's ability to pay. (*Winkenwerder v. Winkenwerder* (1st Dist. 1952), (Abstr.), 349 Ill.App. 161, 109 N.E.2d 926; *Turns v. Turns* (5th Dist. 1968), 96 Ill.App.2d 347, 239 N.E.2d 144.) The amount of alimony and support in a separate maintenance action is to be determined in the same manner as in a case for divorce. In some cases the amount allowed has varied from a fifth to a third and even a half of the income of the husband. (*Decker v. Decker, supra.*) The amount of property possessed also may be taken into consideration. *Low v. Low* (1st Dist. 1907), 133 Ill.App. 613.

■■■ Considering that Dr. Glover had a basic income over $90,000 in 1968, approximately $58,000 in 1969, and $35,000 as a starting salary in a new position, and owned other valuable property, we cannot regard as excessive the award of payments totaling $1,250 a month or $15,000 annually and the order to pay certain other family expenses such as home mortgage, tax and insurance payments, all of which total approximately $22,000 annually. The trial court did not abuse its discretion in setting the amount of the awards under the then evidence, the then conditions and circumstances.

Plaintiff was entitled to an allowance for her attorney fees and costs in a reasonable amount. The amount of $3,000 awarded here was a reasonable amount under the present evidence.

Judgment affirmed.

SMITH, P. J., and TRAPP, J., concur.