(No. 20927.— )

NELLIE AMBERSON, Defendant in Error, *vs.* HENRY R. AMBERSON, Plaintiff in Error.

*Opinion filed June 24, 1932.*

LOUIS GREENBERG, and ALEXANDER W. JAMIESON, for plaintiff in error.

CROWE, GORMAN & SAVAGE, (JAMES C. SHERIDAN, of counsel,) for defendant in error.

Mr. JUSTICE ORR delivered the opinion of the court:

This was a bill in the superior court of Cook county for separate maintenance by the wife, Nellie Amberson, alleging that she was living separate and apart from her husband, Henry R. Amberson, without fault on her part, and that he had left her without cause and was keeping company with another woman. The answer of the husband denied all the charges of the bill. In addition the husband filed a cross-bill praying for divorce, in which he charged that his wife had a violent temper, was guilty of great abuse and personal violence against him and had repeatedly threatened to take his life, and he asked for a divorce on the ground of extreme and repeated cruelty. On final hearing the chancellor found the wife entitled to the relief sought and entered a decree awarding her $50 a week as permanent alimony for herself and two small children, and in addition taxed the husband with $641.50 costs of reporting and transcribing the evidence in the case, and also awarded the sum of $1000 as complainant's solicitors' fees and dismissed the husband's cross-bill for want of equity. By this writ of error the case is brought here for review.

The Ambersons were married on May 6, 1926. Two children were born of the marriage, now about five and two years of age and both now in the custody of their mother, whom we will call the complainant. The husband, whom we will refer to as the defendant, first left home early in September, 1929, and was away for two weeks at that time. In the latter part of October, 1929, he again left home, saying he was going to Champaign to attend a foot-ball game and would return that night. He did not return until the next day. Up to this time the married life of the couple had apparently been happy, as the evidence shows that the defendant, who was a doctor, came home regularly every evening and occasionally took his wife out

to dinner or other entertainment and on frequent motor trips. The wife also visited her mother's home frequently. About a week or so after the foot-ball game the defendant came to his wife and said he was unhappy and wanted a divorce, but she reminded him that she was to have a baby in about two months and that she loved him too much to consider a divorce. He insisted and offered to make provision for her support, telling her to go to her mother's home and stay there. He left home on December 5, 1929, and has lived away from his home and family since then.

The evidence of the husband and wife is conflicting and wholly irreconcilable in certain respects. They were examined orally before the chancellor. It is undisputed that the defendant left his wife and children without charging her with infidelity or other misconduct except that of possessing at times an ungovernable temper and being jealous and suspicious. So far as the evidence is concerned the testimony of the wife is corroborated in important particulars, while the corroboration of the husband's statements is less in degree and concerns matters of less vital importance. The evidence in general does not sustain the husband's charges. On the contrary, it shows that the husband had no just cause for leaving his wife, so far as any misconduct is shown on her part. Certainly no grounds for divorce existed in favor of either the complainant or the defendant. The attempt of the complainant to connect the defendant with an affair with a young high school girl whom she found sitting in the defendant's automobile one evening also failed to establish any serious misconduct on his part. The chancellor saw and heard the witnesses and rendered a decree, based upon what he considered to be the greater weight and credibility of the testimony, in favor of the wife's position. It seems clear that the complainant loved her husband, made numerous efforts to reconcile their differences, and was living separate and apart from him without any fault of her own, in that she had been guilty

of no such misconduct as could reasonably be said to have induced his desertion. This is especially true in view of the fact that she was an expectant mother at the time he deserted her and was then entitled to his most tender devotion and forbearance. Under these circumstances, where no clear and palpable error appears in the findings of fact and where the evidence clearly preponderates in favor of such findings the decree of the chancellor on the merits will not be reversed. *Johnson* v. *Johnson,* 125 Ill. 510; *Porter* v. *Porter,* 162 id. 398.

It is urged that section 1 of "An act in relation to married women" (Smith's Stat. 1931, chap. 68, p. 1619,) is unconstitutional and for that reason the superior court had no jurisdiction over the subject matter to enter a decree against the defendant. Section 1 of the act provides "that married women who, without their fault, now live or hereafter may live, separate and apart from their husbands, may have their remedy in equity in their own names, * * * in the circuit court of the county where the husband resides, for a reasonable support and maintenance, while they so live * * * apart." It is argued that this act is incomplete and uncertain in not defining the term "without their fault." This court has heretofore passed upon similar objections to other statutes and has held them constitutional. In *Klafter* v. *Examiners of Architects,* 259 Ill. 15, the statute authorized the board to revoke an architect's license "for gross incompetency or recklessness in the construction of the buildings." It was there argued that the statute was unconstitutional because of its failure to define the term last quoted. The statute was there upheld, this court saying: "The true distinction is between delegation of power to make the law, which involves a discretion as to what the law shall be, and conferring an authority or discretion as to its execution, to be exercised under and in pursuance of the law." Likewise in *People* v. *Dental Examiners,* 110 Ill. 180, it was held that the meaning of the word

"reputable" as applied to a dental college was not so uncertain as to make the law void. To the same effect, in *People* v. *McCoy,* 125 Ill. 289, it was held that the words "unprofessional or dishonorable conduct" were not so general as to make the statute regulating the practice of medicine void for uncertainty. To deny to the legislature the power to use a generic description, if pressed to its logical conclusion, would practically nullify legislative authority by making it essential that the legislature should define, without the use of the generic terms, all the specific instances to be brought within it. (*People* v. *Hassil,* 341 Ill. 286; *Baltimore and Ohio Railroad Co.* v. *Interstate Commerce Com.* 221 U. S. 612.) A definition of the language of the statute here in question is contained in the case of *Johnson* v. *Johnson, supra,* where this court said: "The 'fault' here meant and contemplated is a voluntary consenting to the separation, or such failure of duty or misconduct on her part as 'materially contributes to a disruption of the marital relation.' If she leaves her husband voluntarily or by consent, or if her misconduct has materially induced the course of action on the part of the husband upon which she relies as justifying the separation, it is not without her fault within the meaning of the law." From these authorities it is evident that the statute in question is not unconstitutional because of its failure to define the term "without their fault." Each marriage relation presents different problems and different personalities, so that no definite rule of conduct can be laid down which would suit each particular case, as what might be a "leaving without fault" in one case would be unjustifiable conduct in another.

No such acts of extreme and repeated cruelty as would entitle the defendant to a divorce under his cross-bill were shown by the evidence. It is not sufficient to show slight acts of violence on the wife's part so long as there is no reason to suppose that the husband will not be able to pro-

tect himself by the proper exercise of his marital powers. *Garrett* v. *Garrett,* 252 Ill. 318; *Teal* v. *Teal,* 324 id. 207.

Objection is made to what are claimed to be excessive awards of $641.50 for reporting and transcribing the evidence and $1000 as solicitors' fees to be paid by the defendant. No certificate of evidence is preserved as to the $641.50 item, so it is impossible for us to determine upon what basis this award of costs was made. The decree fails to state that any evidence was heard as to the amount of work done or the usual and customary fee for such services. Paragraph 163*b* of "An act to authorize the judges of circuit, superior and city courts to appoint shorthand reporters for the taking and preservation of evidence, and to provide for their compensation," (Smith's Stat. 1931, chap. 37, p. 924,) provides, in part, "that in circuits whose population exceeds one million inhabitants, said reporter shall be allowed to charge not to exceed twenty (20) cents per one hundred words for making transcripts of such shorthand notes. Said fees for making transcripts to be paid in the first instance by the party on whose behalf such transcript is ordered, and allowed and taxed as costs in the suit. * * * Provided, however, that when the judge trying the cause shall, of his own motion, order a transcript of said shorthand notes as hereinbefore provided, he may direct the payment of the charges therefor, and the taxation of the same as costs in such matter as to him may seem just." The transcript of the record in this case contains 699 typewritten pages, with an average of about 160 words to the page. Using these figures as a basis of calculation, the amount due to the reporter for transcribing the evidence under the statute above mentioned would be not to exceed $224. Since no evidence showing what services the reporter performed, or the value thereof, is preserved either in the record or in the decree, error has resulted which requires a modification of the decree in that

regard. *Davis Paint Co.* v. *Metzger Oil Co.* 188 Ill. 295; *Glos* v. *Beckman,* 168 id. 74.

As to the allowance of $1000 solicitors' fees the objection is also well taken. The decree recited as follows: "And the court doth further find that the complainant's reasonable solicitors' fees for prosecuting and defending in this cause is the sum of one thousand ($1000) dollars and that said solicitors' fees should be paid by the defendant. * * * It is further ordered, adjudged and decreed that the defendant pay to the complainant the said sum of $1000 as and for her solicitors' fees." In fixing the reasonable amount of a solicitor's fee the inquiry should be directed to what is customary for such legal services where contracts have been made with persons competent to contract, and not what is reasonable, just and proper for the solicitor in the particular case. The inquiry should be, not what an attorney thinks is reasonable but what is the usual charge. (*Reynolds* v. *McMillan,* 63 Ill. 46; *Metheny* v. *Bohn,* 164 id. 495.) The record here failed to sustain the award of $1000 solicitors' fees taxed against the defendant and no facts are found in the decree by which it can be sustained. Only two attorneys besides the complainant's solicitor testified as to the value of the legal services rendered. The complainant's solicitor testified that he had put in a total of about eight days in court and valued all of his services rendered at the sum of $1500. In support of this fee one attorney testified that he thought "$1500 is a modest fee" but stated he was not familiar with practice in divorce cases, and further qualified his testimony by basing it upon the income of the defendant for the year 1929, which was $10,280. He was not asked what fee would in his judgment have been the customary and usual fee based upon the income of the defendant of $3800 in 1930, the year prior to the hearing. He also stated on cross-examination that the usual charge of attorneys for trial work in Chicago is $50 per day. In rebuttal one attorney testified that the complainant's solicitor

should be entitled for his services to about $400 or $500 on the basis of $50 a day. Thus it will be seen that both of the attorneys who testified (aside from the complainant's solicitor) fixed $50 per day as the usual and customary fee to be charged for trial work. The complainant's solicitor testified that he spent a total of approximately eight days' time in court, which on the basis of this evidence should have entitled him to an award of $400. While the statute gives a trial judge discretion in fixing attorney's fees "as may seem just and equitable" in separate maintenance cases, (Smith's Stat. 1931, chap. 68, par. 22, p. 1619,) yet the award to the complainant's solicitor of $1000 is excessive and cannot be justified by the proof in the record.

The decree of the superior court of Cook county will be modified as above indicated to provide an award of $224 for reporting and transcribing the evidence and a solicitor's fee of $400. So modified the decree will be affirmed.

*Decree modified and affirmed.*