GERTRUDE KERBIS, Plaintiff and Counterdefendant-Appellant, *v.* DONALD KERBIS, Defendant and Counterplaintiff-Appellee.

First District (5th Division)   No. 60300

Opinion filed May 14, 1976.

Torshen, Fortes & Eiger, Ltd., of Chicago (Jerome H. Torshen, Robert A. Skirnick, and Maria A. Skirnick, of counsel), for appellant.

Robbins, Coe, Rubinstein & Shafran, Ltd., of Chicago (Manuel J. Robbins and Emil Shafran, of counsel), for appellee.

Mr. PRESIDING JUSTICE LORENZ delivered the opinion of the court:

Plaintiff appeals from a judgment which dismissed her complaint for separate maintenance and granted a divorce to defendant on grounds of physical cruelty. On appeal she contends that the trial court erred when it (1) denied separate maintenance on the basis that her marriage was irreconcilable, (2) granted defendant's request for divorce despite the manifest weight of evidence which did not establish physical cruelty, and (3) committed several evidentiary rulings which denied her a fair trial.

Plaintiff and defendant were married in Acapulco, Mexico, on August 23, 1961. From the time of their marriage until their separation the parties lived in Chicago. One child, Kim, was born to the parties on May 18, 1963. A second child, Julian, was adopted by the parties and had reached majority at the time of these proceedings. Defendant's child by a previous marriage, Lisa, had been residing with the parties since the inception of the marriage.

The following evidence pertinent to this appeal was adduced at trial.

*For plaintiff*

*Gertrude Kerbis on her own behalf*

Defendant, a professional tennis instructor at a summer camp in Watervliet, Michigan, and at a tennis club in Highland Park, did not return to the marital home after the summer season in September, 1970. At a family Thanksgiving dinner in 1970, which defendant attended, she made a toast to togetherness. Defendant left immediately after the dinner. He stated that he intended to live a divorced life. Around Christmas that same year, she offered to look for a family residence on the North Shore closer to his tennis club, but defendant rejected her offer. Defendant always had access to their apartment.

In May, 1971, she observed defendant leave the apartment of Eileen Kaplan at about 2:30 a.m.

In June, 1972, at about 7 a.m., she looked through some windows in the master bedroom at their house in the tennis camp and observed defendant lying nude in bed with a Mrs. Goldblatt. She attempted to serve a subpoena on Mrs. Goldblatt, but defendant stopped her and forced her to leave the camp.

She denied ever calling her husband at the camp and threatening to throw his clothes into the hallway of their apartment building.

Defendant did not attempt a reconciliation on January 20, 1971. She denied breaking his finger on that night and hitting him with a chair. Defendant did attempt to strike her and when she ducked his hand crashed into the wall.

On February 6, 1971, she returned home from a party and found defendant moving items from the house. A dispute followed and

defendant broke down the hallway door. She called the police and defendant was arrested. She denied tearing his coat or striking him.

She admitted having a conversation with Ronald Barnard, an attorney, regarding defendant's visitation rights with their daughters.

*John Elsasser*

Defendant hired him in May, 1972, to work at the tennis camp and also to do work at the Winnetka home of Mrs. Goldblatt. One evening while he was painting the upstairs bathroom next to Mrs. Goldblatt's bedroom, defendant arrived. He saw Mrs. Goldblatt enter the bedroom. He was lying on the couch in the morning when he heard defendant leave the house. Mrs. Goldblatt also lived with defendant at the tennis camp in Michigan. He admitted that defendant fired him after several disagreements.

*Phillip Le Tourneau*

He was a private investigator hired by plaintiff. On May 16, 1971, he observed defendant and Eileen Kaplan enter her apartment. After plaintiff confronted defendant at the apartment door, defendant left with his hair and clothes in a disheveled condition.

*Eileen Kaplan under section 60*

She attended a movie with defendant sometime after her divorce in February, 1970. She recalled private detectives knocking on her apartment door at about 1 a.m. on one occasion when defendant was present.

*Defendant Donald Kerbis under section 60*

He currently resides at an apartment in Highland Park under a two-year lease although his legal address is in Watervliet, Michigan, and he has a Michigan driver's license. He has also lived in Glencoe and at the tennis camp since September, 1970. He is not presently willing to live with plaintiff.

He attempted many reconciliations, but plaintiff would not reconcile.

On May 18, 1971, he had dinner with Eileen Kaplan and later returned to her apartment to watch television. He left around midnight because his spring classes began early the next day.

*For defendant*

*Martha Paskell Colbert*

She is the executive housekeeper at the tennis camp. The windows in the master bedroom are eight feet from the ground and are usually covered by drapery. The three bedrooms were separately occupied by Ernesto Aquaire, by Mrs. Goldblatt, and by defendant.

On cross-examination, she admitted that she never entered the house before 8 in the morning and she did not clean the house during the camp season.

*Defendant Donald Kerbis on his own behalf*

He separated from his wife on July 17, 1970. On that date, she left the tennis camp after an argument and later advised him that she had thrown his clothes into the hallway of their Chicago apartment and intended to divorce him. Although he flew into Chicago from the camp to attempt a reconciliation, plaintiff refused.

On September 10, 1971, plaintiff kicked, scratched and threw a knife at him.

He attempted a reconciliation after the family's Thanksgiving dinner in 1970, but plaintiff again kicked, scratched and threw a knife at him.

On January 20, 1971, plaintiff hit him over the head with a telephone book and a chair.

Defendant offered an exhibit purporting to be an admittance slip to the emergency room of Augustana Hospital on January 20, 1971. He stated that he signed the slip and that the slip showed he was admitted for a fractured finger. Plaintiff specifically objected to the admission of the slip on the grounds that the exhibit was a carbon copy and that the writing of the word "finger" on the slip did not correspond with the rest of the slip. The trial court allowed the exhibit into evidence.

On February 6, 1971, plaintiff again kicked and scratched him and also tore his new overcoat. He was arrested after he broke the lock on the apartment door in order to retrieve his car keys.

He denied ever having sexual relations with Eileen Kaplan or Mrs. Goldblatt. He never occupied the same bedroom with Mrs. Goldblatt, in fact, her mother was staying with Mrs. Goldblatt on the day plaintiff attempted to serve the subpoena. He recalled the confrontation with the private detective at Eileen Kaplan's apartment, but stated that he left her apartment before midnight on that date.

Although he is over six feet tall and weighs 180 pounds, he was not in good physical health as a result of many accidents. He still teaches tennis and is able to move around the tennis court.

During their fight on January 20, 1971, he was unable to restrain his wife from beating him with the telephone book and chair. However, he was able to take a knife which she was threatening him with away from her.

Except for the broken finger, he never saw a doctor for any of the marks and bruises he sustained. He later recalled seeing a doctor after being struck over the head.

*Evelyn Addison*

She drove plaintiff to the tennis camp in July, 1970. After a dispute, plaintiff announced that she was leaving the camp and intended to divorce defendant.

On cross-examination, she admitted knowing defendant prior to meeting plaintiff.

*Eugene Lempp for plaintiff on rebuttal*

He is plaintiff's father. Although he was present, he did not hear any argument between plaintiff and defendant after the family's Thanksgiving dinner in 1970.

*Plaintiff Gertrude Kerbis on rebuttal*

She denied striking defendant, throwing a knife at him, or knowing of a broken finger. The purpose of the two letters from her attorney was to threaten defendant with a divorce. She left the tennis camp in July, 1970, because she was ill.

Following closing arguments by both parties, the trial judge announced his decision in open court finding, *inter alia*, that

> "The Court has first taken the idea of not giving anybody separate maintenance because separate maintenance in the Court's opinion, is where there is a hope of reconciliation * * *.
>
> After hearing all the testimony, the Court has decided it cannot enter a decree of separate maintenance because that would be of no avail in my opinion. It would serve no purpose. And from the testimony of both lawyers, this marriage is through. It is over with.
>
>      * * *
>
> My reason for separate maintenance is not the differences between the people, but more or less that the question has been asked and answered, was that was there a chance or a hope of reconciliation, and the answer is no, on both sides.
>
>      * * *
>
> They have to settle their differences and this is why I feel a divorce is the only possible alternative in this situation."

OPINION

Plaintiff first contends that the trial court erred when it denied separate maintenance on the basis that her marriage was irreconcilable. The statutory remedy of separate maintenance is available to a wife who, without her fault, is living separate and apart from her husband. (Ill. Rev. Stat. 1975, ch. 68, par. 22; *Shapiro v. Shapiro*, 113 Ill. App. 2d 374, 252 N.E.2d 93.) In the instant case, the trial judge unequivocally stated his reasons for dismissing plaintiff's complaint. We believe that the trial court erred when it applied a rationale that was clearly beyond the requirements mandated by our legislature. As this court has previously stated:

> "* * * divorce might be a better solution than separate maintenance, as the parties have apparently separated permanently without a chance for reconcilation. However, the wife elected to have her remedy in separate maintenance and is contesting the complaint for divorce. Divorce cannot be forced

upon her, as divorce can only be granted upon sufficient proof of the grounds set forth under statute. Anything short of the requirements therein will not suffice." *Akin v. Akin,* 125 Ill. App. 2d 159, 167-68, 260 N.E.2d 481, 485.

To deny plaintiff her elected remedy here would be tantamount to the type of forced solution denounced in *Akin.*

Plaintiff has testified that defendant lived apart from the marital home since approximately September, 1970. Defendant has enumerated his past residences. At the time of trial he had committed himself to a two-year lease on a separate apartment. Moreover, he testified that he is unwilling to return home. Consequently, we believe that the manifest weight of the evidence clearly established the requisite separation.

However, plaintiff's evidence must also establish that the separation occurred without her fault in order to prevail. The concept of fault under this section does not require that the wife be entirely blameless in order to be entitled to separate maintenance. (*Glover v. Glover,* 132 Ill. App. 2d 284, 268 N.E.2d 218.) Indeed, a wife was not at fault when she removed her husband from the marital home because he was openly consorting with another woman. (*DeGeeter v. DeGeeter,* 16 Ill. App. 3d 262, 305 N.E.2d 727.) On the other hand, fault need not be so grave as by itself would be a sufficient ground for divorce. *David v. David,* 77 Ill. App. 2d 448, 222 N.E.2d 540.

In the instant case, the manifest weight of the competent evidence clearly indicates that plaintiff was without fault. Although defendant produced evidence that plaintiff threatened a divorce, the record is uncontested that she never pursued this threat and that her sole attempt at judicial recourse was this separate maintenance action. Defendant's supposed good faith attempts at reconciliation are belied by evidence of his two-year lease commitment, his admitted dates with Eileen Kaplan, and the adverse testimony of Elsasser and Lempp.

■■ For the foregoing reasons, we hold that the trial court erred by denying separate maintenance on grounds not recognized under the statute and despite the manifest weight of the evidence supporting that remedy.

Nonetheless, defendant would be entitled to a divorce if the evidence established that plaintiff was guilty of extreme and repeated acts of physical cruelty. (Ill. Rev. Stat. 1975, ch. 40, par. 1.) If a husband's testimony by itself is sufficiently credible to establish two separate acts of physical violence resulting in pain and bodily harm, that testimony need not be corroborated by other evidence. (*Surratt v. Surratt,* 12 Ill. 2d 21, 145 N.E.2d 594; *Haring v. Haring,* 125 Ill. App. 2d 116, 260 N.E.2d 396.) However, the acts of physical cruelty must be clearly proved and the physical stature of the parties may be considered in weighing the

sufficiency of the evidence. *Balfour v. Balfour*, 20 Ill. App. 2d 590, 156 N.E.2d 629; *Odom v. Odom*, 1 Ill. App. 3d 185, 273 N.E.2d 623.

Defendant alleged three separate acts of physical cruelty. The first act allegedly occurred after a family dinner in 1970. Both plaintiff and Eugene Lempp testified that no such fight occurred. The second and third acts of January 20 and February 6, 1971, are solely evidenced by defendant's own testimony and, correspondingly, denied by plaintiff. Under these circumstances, the findings of the trial judge sitting as the trier of fact will not be disturbed on appeal unless such are clearly and manifestly against the weight of the evidence. (*Shumak v. Shumak*, 30 Ill. App. 3d 188, 332 N.E.2d 177.) Nonetheless, we find it clearly incredible that defendant, a six-foot-plus, 180-pound, tennis professional, was unable to ward off the supposedly injurious blows of plaintiff, and yet be able to disarm her when she later brandished a knife. When this incredible story is combined with the dearth of evidence to support any physical or bodily harm, we must reject the findings that these acts occurred.

■■ Plaintiff has contended that the trial court erred in admitting a carbon copy of an emergency room admittance slip with the word "finger" written upon it. Defendant correctly argues that plaintiff has not preserved the right to argue that medical records are not admissible under the business records exception to the hearsay rule (Ill. Rev. Stat. 1975, ch. 110A, par. 236(b)) by virtue of her specific objection at trial. (*Styblo v. McNeil*, 317 Ill. App. 316, 45 N.E.2d 1011.) Nonetheless, plaintiff's objection did apprise the trial court that the best evidence rule applied. Defendant offered no reason for the unavailability of an original or duplicate original unaltered by additional writing as required under the rule. (*Gillson v. Gulf, Mobile & Ohio R.R. Co.*, 42 Ill. 2d 193, 246 N.E.2d 269.) Therefore, the admission of the altered carbon copy was error and we have not considered it in our determination of which theory the manifest weight of the evidence supported.

In light of our disposition of the substantive issues, it is not necessary to reach plaintiff's remaining contentions on this appeal.

The judgment of the circuit court dismissing plaintiff's complaint for separate maintenance and granting defendant a divorce on grounds of physical cruelty is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

SULLIVAN and BARRETT, JJ., concur.