MAGGIE COLLINS, Plaintiff-Appellee, Cross-Appellant, *v.* JOSEPH COLLINS, Defendant-Appellant, Cross-Appellee.

First District (2nd Division)   No. 62659

Opinion filed March 22, 1977.

Joseph Collins, of Chester L. Blair, Chartered, of Chicago, for appellant.

George L. Lincoln, of Chicago, for appellee.

Mr. PRESIDING JUSTICE DOWNING delivered the opinion of the court:

Plaintiff, Maggie Collins, brought an action for separate maintenance against defendant, Joseph Collins, who then counterclaimed for a divorce. Following a bench trial, the court awarded separate maintenance to plaintiff and denied defendant's counterclaim. Defendant appeals from the denial of his divorce, the order of separate maintenance, and the order to pay a portion of plaintiff's attorney's fees. Plaintiff cross-appeals from the court's finding that the child, Letitia Collins, was not born of the parties and from the court's order denying payment of the entire amount of arrearage in temporary support payments allegedly owed by defendant.

Plaintiff was married to a former husband, Louis Hill, when the child Letitia was born on September 10, 1967. Hill had left plaintiff around 1960. From 1962 onward plaintiff and defendant maintained a sexual relationship; they married on September 25, 1971. Although defendant suggested that plaintiff was having an affair with a man who drove her to work, plaintiff denied it. Defendant left the marital home on February 26, 1974, under circumstances which are disputed by the parties. They often argued about finances and each spouse contends the other struck blows in the course of a particular argument. Plaintiff described defendant as bad-tempered in that he occasionally beat her, often cursed at her, and continuously berated her children in obscene terms. On the other hand, defendant claimed that his wife badgered him about paying bills, hit him shortly after his return from the hospital, and threatened to hurt his injured back.

During the marriage defendant submitted an affidavit to the Illinois Department of Public Health stating that he was the natural father of Letitia and had subsequently married Letitia's mother. Defendant later questioned the validity of the affidavit. He testified that he did not know what he was signing, did not remember doing so, did not recognize his signature, and thought the form was necessary for the child's school registration.

The trial court granted plaintiff separate maintenance and exclusive possession of the marital residence and furniture. Defendant's counterclaim for divorce was dismissed, and he was ordered to pay $25 per week as separate maintenance. No support was ordered for the child, Letitia, because the court found she was presumed to be the child of plaintiff's former husband. Lastly defendant was ordered to pay $850 in attorney's fees and to pay $50 per week in arrearages. Thereupon, defendant appealed and plaintiff cross-appealed.

## I.

Defendant first argues that his counterclaim for divorce was improperly denied. As plaintiff's nagging caused extreme embarrassment and her threats of injury rendered life miserable, defendant concludes that both his person and his health were seriously endangered. He contends that his testimony established sufficient grounds for a divorce based on mental cruelty. We disagree.

■■■ Mental cruelty is conduct causing embarrassment, humiliation, and anguish so as to render life miserable and unendurable, or to cause a spouse's life, person, or health to become endangered. (*McGowan v. McGowan* (1st Dist. 1973), 15 Ill. App. 3d 913, 914, 305 N.E.2d 261; *Quilty v. Quilty* (3d Dist. 1972), 5 Ill. App. 3d 801, 803, 284 N.E.2d 690; *Woodshank v. Woodshank* (3d Dist. 1971), 2 Ill. App. 3d 596, 599, 274 N.E.2d 694; *Howison v. Howison* (2d Dist. 1970), 128 Ill. App. 2d 377, 382, 262 N.E.2d 1.) To be entitled to a divorce on the ground of mental cruelty, a spouse must also show that the offensive conduct was unprovoked. (*Rosenbaum v. Rosenbaum* (1st Dist. 1976), 38 Ill. App. 3d 1, 12, 16-18, 349 N.E.2d 73; *Murphy v. Murphy* (1st Dist. 1975), 31 Ill. App. 3d 321, 339, 334 N.E.2d 779; *Gregory v. Gregory* (2d Dist. 1974), 24 Ill. App. 3d 436, 441, 321 N.E.2d 122.) In examining each case on its own facts, the court will consider the parties' pattern of conduct, their respective emotional makeup, and the circumstances under which the complained of acts occurred. (*Surratt v. Surratt* (1957), 12 Ill. 2d 21, 24, 145 N.E.2d 594; *Stanard v. Stanard* (3d Dist. 1969), 108 Ill. App. 2d 240, 248, 247 N.E.2d 438.) Further, the conduct which is alleged to constitute extreme and repeated mental cruelty (Ill. Rev. Stat. 1973, ch. 40, par. 1) must have been evidenced on at least two separate occasions. See *Knox v.*

*Knox* (1st Dist. 1975), 31 Ill. App. 3d 816, 820, 334 N.E.2d 891; *Collinet v. Collinet* (1st Dist. 1961), 31 Ill. App. 2d 72, 77, 175 N.E.2d 659.

■■ Defendant failed to establish that plaintiff's unprovoked conduct constituted extreme and repeated mental cruelty. That of which he complains occurred in a single episode. In addition, only defendant's testimony points to blameworthy actions by plaintiff and she disputes his claims. Credibility is the key to resolving such conflicting testimony. The trial judge was in the best position to determine the parties' credibility because he observed their demeanor and heard them testify in open court. Under these circumstances, and based on the record of this case, we find no basis to disturb the finding of the trial court. *Tuyls v. Tuyls* (1961), 21 Ill. 2d 192, 195, 171 N.E.2d 779; *Hayes v. Hayes* (5th Dist. 1969), 117 Ill. App. 2d 211, 215, 254 N.E.2d 288.

## II.

■■ We also disagree with defendant's contention that the trial court erred by granting plaintiff an award of separate maintenance. The statutory remedy of separate maintenance is available to a wife who, without her fault, is living separate and apart from her husband. (Ill. Rev. Stat. 1973, ch. 68, par. 22; *Kerbis v. Kerbis* (1st Dist. 1976), 38 Ill. App. 3d 866, 870, 350 N.E.2d 1.) To be without fault, plaintiff did not have to be wholly blameless (*Kerbis; Glover v. Glover* (4th Dist. 1971), 132 Ill. App. 2d 284, 289, 268 N.E.2d 218); she needed only to refrain from consenting to a mutual separation or from contributing to the disruption of the marriage (*Amberson v. Amberson* (1932), 349 Ill. 249, 253, 181 N.E. 825; *Decker v. Decker* (1917), 279 Ill. 300, 304, 116 N.E. 688; *Johnson v. Johnson* (1888), 125 Ill. 510, 515, 16 N.E. 891). As judged by these rules, plaintiff in the instant case was without fault in living separate and apart from defendant.

■■ Although defendant maintains plaintiff's conduct drove him from the marital home, we note that the evidence was disputed. The conflicting testimony was presented to the trial court for its careful consideration. Upon review of the matter, we are unable to say that the trial court's decree was against the manifest weight of the evidence.

## III.

■■ Defendant also urges that the amount awarded for attorney's fees and for support was unnecessary. The well-established principle, however, is that the amount of attorney's fees rests in the sound discretion of the trial judge which will not be interfered with unless abused. (*Welsh v. Welsh* (1st Dist. 1976), 38 Ill. App. 3d 35, 39, 347 N.E.2d 512; *Greenbaum v. Greenbaum* (1st Dist. 1973), 14 Ill. App. 3d 217, 221, 302 N.E.2d 165.) The same rule applies to support awards. (*Canady v.*

*Canady* (1964), 30 Ill. 2d 440, 444, 197 N.E.2d 42; *Doyle v. Doyle* (1915), 268 Ill. 96, 101, 108 N.E. 796.) Our review of the record persuades us that the trial court properly exercised its discretion in both areas.

■■■ In settling upon the amount of support, the court's award reflects examination of the relevant factors: the ages of the parties, their health, their respective property and income, their station in life, the existence of dependent children, and the nature of the alleged misconduct. *Furth v. Furth* (1st Dist. 1972), 5 Ill. App. 3d 73, 76, 283 N.E.2d 102; *Dmitroca v. Dmitroca* (2d Dist. 1967), 79 Ill. App. 2d 220, 223, 223 N.E.2d 545; *Warren v. Warren* (1st Dist. 1963), 40 Ill. App. 2d 286, 289, 189 N.E.2d 401.) Equally apparent is the court's consideration of the factors necessary to determine the amount of attorney's fees: skill and standing of the attorney employed, the nature of the cause, and the novelty and difficulty of the questions at issue; the amount and importance of the subject matter; the degree of responsibility involved in the management of the cause; the time and labor required; the usual and customary charge in the community; and the benefits resulting to the client. (*Neville v. Davinroy* (5th Dist. 1976), 41 Ill. App. 3d 706, 711, 355 N.E.2d 86.) Although the allowance of such fees is not automatic (*McLeod v. McLeod* (1st Dist. 1971), 133 Ill. App. 2d 111, 113, 272 N.E.2d 834; *Berg v. Berg* (1st Dist. 1967), 85 Ill. App. 2d 98, 101, 229 N.E.2d 282), it is not error for a trial judge to rely on the experience he has acquired in the discharge of professional duties as to the value of legal services rendered (*Lauzen v. Lauzen* (2d Dist. 1967), 81 Ill. App. 2d 472, 475, 225 N.E.2d 427; *Richheimer v. Richheimer* (1st Dist. 1965), 59 Ill. App. 2d 354, 365, 208 N.E.2d 346). In the case at bar, we find no abuse of discretion in the trial court's award of support and attorney's fees.

## IV.

Plaintiff, in her cross-appeal, contends that the trial court erred in depriving her of past due installments of temporary support payments. Defendant had been previously ordered to pay $75 per week in temporary support, later reduced to $45 per week. When the permanent support arrangement commenced on April 3, 1975, defendant had paid only $560, thereby accumulating $2,050 in arrearage. The trial court ordered defendant to pay $25 per week in separate maintenance and $690 of arrearage in installments of $50 per week. In arriving at the figure of $690, the court computed the amount by multiplying the weeks in arrearage by $25, rather than the figure originally ordered as temporary support. The denial of the total past due installments owed by defendant was error.

Past due installments of alimony and support money are a vested right; and the court has no authority to modify them either as to amount or time

of payment. (*Craig v. Craig* (1896), 163 Ill. 176, 185, 45 N.E. 153; *Dunsky v. Dunsky* (1st Dist. 1976), 40 Ill. App. 3d 845, 848, 353 N.E.2d 371; *Ellingwood v. Ellingwood* (1st Dist. 1975), 25 Ill. App. 3d 587, 590, 323 N.E.2d 571; *Slavis v. Slavis* (1st Dist. 1973), 12 Ill. App. 3d 467, 472, 299 N.E.2d 413; *Hurt v. Hurt* (1st Dist. 1953), 351 Ill. App. 427, 431, 115 N.E.2d 638.) A party directed to pay cannot modify support payments unilaterally, and it is not for him to determine when or for what reasons he shall stop payments. (*Voss v. Voss* (3d Dist. 1974), 23 Ill. App. 3d 312, 314, 319 N.E.2d 72; *Wilson v. Wilson* (2d Dist. 1970), 122 Ill. App. 2d 142, 148, 257 N.E.2d 810.) So, also, when a court decrees that an amount of temporary support is to be paid, the court cannot reduce it retroactively. As each installment becomes due, the right to that installment is vested. The party entitled to receive this payment has a right to expect, plan, and look forward to its receipt, while on the other hand the duty to continue payment cannot be reduced or eliminated.

■■ In the instant case, there was no change in the parties' circumstances which would permit the trial court to deprive plaintiff of her vested right to the past due installments. Consequently, the cause must be remanded with directions that the trial court reinstate the total amount of past due installments owed by defendant to plaintiff.

## V.

■■ Plaintiff also cross-appeals from the trial court's finding that the child, Letitia, was not born of the parties. Although plaintiff was married to her former husband when Letitia was born, plaintiff and her former husband had not lived together for several years. Plaintiff and defendant cohabited for approximately nine years prior to their marriage. During that period the child was born. The trial court found that Letitia was presumed to be the child of plaintiff's former husband and, therefore, refused to order defendant to pay any award of child support for her. We believe that this finding is against the manifest weight of the evidence and must be reversed.

■■ Although a husband is presumed to be the father of a child born to his spouse during marriage (*Sugrue v. Crilley* (1928), 329 Ill. 458, 464, 160 N.E. 847, *cert. denied* (1928), 278 U.S. 616, 73 L. Ed. 539, 49 S. Ct. 20; *Jones v. Industrial Com.* (1976), 64 Ill. 2d 221, 225, 356 N.E.2d 1), the presumption is rebuttable and can be overcome by clear and conclusive evidence (*Sugrue,* at 464; *Jones,* at 225; *People ex rel. Jones v. Schmitt* (3d Dist. 1968), 101 Ill. App. 2d 183, 186, 242 N.E.2d 275; *Robinson v. Ruprecht* (1901), 191 Ill. 424, 432, 61 N.E. 631). If the presumption is overcome, the child is no longer considered legitimate and must, therefore, be illegitimate.

Section 12 of our Probate Act recites in part: "A child who was

illegitimate whose parents intermarry and who is acknowledged by the father as the father's child is legitimate." (Ill. Rev. Stat. 1973, ch. 3, par. 12.) The parties in this case did intermarry and the question is whether defendant *acknowledged* the child. The term "acknowledged" in the sense of establishing paternity of an illegitimate child is used in a nontechnical sense. (*Mezel v. Mobley* (1960), 21 Ill. 2d 20, 22, 170 N.E.2d 595.) Thus, the cases dealing with the issue often discuss the length of time in which the parties lived together with the child, the frequency and manner of the father's declarations of paternity, and the subsequent marriage of the parties. (See *Miller v. Pennington* (1905), 218 Ill. 220, 75 N.E. 919; *In re Estate of Waszkiewicz* (2d Dist. 1963), 42 Ill. App. 2d 49, 191 N.E.2d 391.) In the case at bar, defendant lived with plaintiff for several years, signed the State form affirming Letitia's legitimacy, and never denied paternity until the time of the separate maintenance proceedings. As in the case of *Racky v. Racky* (1st Dist. 1972), 5 Ill. App. 3d 1084, 1087, 284 N.E.2d 425, defendant executed a written acknowledgement of paternity and failed to deny having sexual relations with the mother.

■■ When plaintiff and her former husband were divorced in 1969, the divorce decree set forth provisions covering support and visitation rights for the three sons found to have been born of that marriage. There is no mention of Letitia in the decree, although she was over a year old at the time. Furthermore, defendant claimed Letitia as a dependent on his Federal income tax returns for the years 1971 and 1972. In *Miller v. Pennington* (1905), 218 Ill. 220, 226, 75 N.E. 919, another father sought to disavow his child after acknowledgement. The court's response is applicable here:

> "It seems to us that it would be an unjust and unwarranted construction of the law to say that the father of an illegitimate child, who has legitimated it by marrying its mother and acknowledged it to be his, can thereafter change its status by any subsequent declaration." Accord, *Verne v. Healea* (3d Dist. 1929), 254 Ill. App. 334, 356.

■■ In finding that the child, Letitia, was not born of the parties, the trial court incorrectly believed that the child was conclusively presumed to be the child of plaintiff's former husband. That is not the law of this State. Plaintiff and defendant intermarried after the child's birth; and defendant acknowledged the child. Thus, in accordance with the statutory requirements of the Probate Act, Letitia became the legitimate child of defendant. The court's finding was clearly against the manifest weight of the evidence.

In review, therefore, we summarize our holdings as follows: (1) the court's denial of defendant's counterclaim for for divorce is affirmed; (2)

the court's decree of separate maintenance to plaintiff is affirmed; (3) the court's award of support and attorney's fees is affirmed; (4) the court's denial of the total amount of past due installments of temporary support owed plaintiff is reversed and remanded with directions; and (5) the court's finding that the child, Letitia, was not born of the parties is reversed and remanded. Thus, the cause is reversed and remanded with directions to the trial court to proceed consistent with the views expressed herein.

Affirmed in part; reversed and remanded in part with directions.

STAMOS and PERLIN, JJ., concur.