LILIAN CHRISTIAN, Plaintiff-Appellee, *v.* RAMAH CHRISTIAN, Defendant-Appellant.

First District (5th Division)   Nos. 77-1512, 78-62 cons.

Opinion filed February 23, 1979.

Richard Gigante, P. C., of Chicago (Paul R. Jenen, of counsel), for appellant.

Kenneth A. Helmin and Gregory P. Guth, both of Chicago, for appellee.

Mr. JUSTICE MEJDA delivered the opinion of the court:

This appeal is taken from a judgment for plaintiff in her divorce action against defendant, and from the award of fees to plaintiff's attorney both in the divorce proceeding and in defense of the appeal. The trial court entered judgment of divorce on plaintiff's complaint, dismissed defendant's counterclaim and ordered defendant to pay plaintiff's attorney's fees in the amount of $2500. Defendant appealed from the judgment and order. Subsequently, pursuant to plaintiff's petition, the trial court awarded plaintiff's attorney $3750 to represent plaintiff on appeal and defendant filed a separate appeal from that order. The appeals are consolidated in this court.

Defendant contends: (1) that the judgment of divorce on the grounds of mental cruelty is against the manifest weight of the evidence; (2) that the trial court committed reversible error in finding that defendant had made a gift of $1500 to his son; (3) that the trial court abused its discretion in awarding plaintiff attorney's fees for the trial proceedings and, alternatively, that the fees were excessive; and (4) that the trial court

abused its discretion in awarding plaintiff attorney's fees for the defense of the appeal and, in the alternative, that those fees were excessive. The pertinent facts follow.

Plaintiff and defendant were first married on March 6, 1958, and divorced on October 21, 1974. Three children were born to them during that marriage. The parties remarried on April 30, 1976, and plaintiff filed a complaint for divorce on December 7, 1976, alleging that defendant had caused her serious emotional and physical distress. Plaintiff also sought custody of their two minor children, child support and educational expenses for the children, alimony and attorney's fees and costs. Defendant presented a counterclaim for divorce on the first day of trial, charging plaintiff with acts of mental cruelty and adultery. Testimony was taken from both parties, their two oldest children, Lynne and Lydell, and defendant's mother, Esther Adams. The substance of the testimony of the witnesses will be discussed in conjunction with the specific issues raised by defendant.

After all testimony was heard, and following closing arguments, the trial court found that the evidence introduced by plaintiff sustained her allegations of mental cruelty. It further found that defendant did not prove the allegations of his counterclaim and ordered the counterclaim dismissed. Judgment for divorce was entered on behalf of plaintiff, granting plaintiff custody of the parties' remaining minor child, Sabrina, and ordering defendant to make weekly support payments for her. Defendant was also ordered to make regular payments to contribute to the cost of Lydell's education and to provide for life insurance benefits and medical expenses for Sabrina. Defendant was declared sole owner of a car purchased for Lydell's use, but was ordered to pay Lydell $1500. Plaintiff retained sole title to the home which had been transferred to her by defendant in compliance with the divorce decree in their first marriage. The trial court further ordered defendant to pay plaintiff's attorney's fees in the amount of $2500.

Defendant appealed from the judgment of divorce, and plaintiff submitted a petition seeking prospective attorney's fees for maintaining the appeal. The trial court ordered defendant to pay plaintiff's appellate attorney's fees in the amount of $4500, to be paid in two equal installments. Upon the filing of a motion to vacate by defendant, the order was modified and the amount of fees reduced to $3750 for the defense of the appeal.

OPINION

I.

■■ ■ Defendant first contends that the judgment of divorce for plaintiff on

grounds of mental cruelty is against the manifest weight of the evidence. Mental cruelty is a course of unprovoked, offensive conduct toward one's spouse which causes embarrassment, humiliation and anguish so as to render the spouse's life miserable and unendurable, and which actually affects the spouse's physical or mental health. (*Collins v. Collins* (1977), 47 Ill. App. 3d 258, 361 N.E.2d 787; *Rosenbaum v. Rosenbaum* (1976), 38 Ill. App. 3d 1, 349 N.E.2d 73; *McGowan v. McGowan* (1973), 15 Ill. App. 3d 913, 305 N.E.2d 261.) The facts of the particular case must be considered in light of the parties' pattern of conduct, their respective emotional make-up and the circumstances under which the conduct occurred (see *Surratt v. Surratt* (1957), 12 Ill. 2d 21, 145 N.E.2d 594; *Collins v. Collins*), and the ultimate test is the effect of the conduct on the complaining spouse and the marriage itself. (*McGowan v. McGowan.*) We conclude that the evidence adduced at trial amply supports the judgment of the trial court.

Plaintiff testified that defendant treated her as if she were "nobody," calling her names such as "bitch" and "whore" every time he came home, and daily accusing plaintiff of infidelity. She stated that the name-calling and accusations took place in front of the children and her testimony was corroborated by both Lynne and Lydell Christian, the parties' two oldest children. Lynne testified that she had been present when defendant called plaintiff names and accused her of sleeping with other men. Lynne further testified that the course of defendant's conduct began about a month after the parties remarried, and continued nightly until it became necessary for one of the children to accompany plaintiff when she left the house in order to avoid further accusations. Lydell also testified that defendant daily insulted plaintiff and accused her of having a boyfriend.

Plaintiff's testimony also discloses a pattern of abusive phone calls. Plaintiff had to get up for work at about 2:30 a.m. each morning and defendant worked at night. According to plaintiff, defendant would call her at odd hours every night, at times letting the phone ring without speaking to plaintiff when she answered, and at other times calling her names or accusing her of having a man with her. Both Lynne and Lydell testified that they had been present or answered the phone on various occasions when plaintiff received the phone calls.

As a result of defendant's behavior, plaintiff testified, she lost 14 pounds, saw a doctor who prescribed tranquilizers for her nervousness, and was forced to take time off work. After defendant left the marital home, plaintiff became "peaceful" and did not have to see the doctor as often. All of defendant's actions were unprovoked, plaintiff testified, because she treated defendant "as a husband" during the time they lived together after the remarriage.

Defendant maintains that plaintiff has not proved her allegations

because of the lack of detail in her testimony, because she was impeached twice in the course of the trial, and because there was no showing that defendant's actions were unprovoked. We disagree.

Defendant does no more than to make the bare claim that plaintiff's testimony lacked detail and disregards the fact that Lynne Christian and Lydell Christian also provided testimony for the court to consider. However, the course of defendant's conduct and its effect on plaintiff and the parties' marriage was sufficiently shown through the testimony of plaintiff and her two children.

Nor is there any merit to defendant's claim that plaintiff was impeached. In the first instance, plaintiff testified that she took three weeks off from work due to the nervous condition caused by defendant's actions. On cross-examination plaintiff testified that she helped her son Lydell with his application for college and also saw his college counselor. Defendant's mother, Esther Adams, testified on defendant's behalf that she worked with plaintiff and rode to work with her on a daily basis. Before plaintiff's three-week absence from work, Mrs. Adams testified, plaintiff had told her she would have to find another way to get to work because plaintiff was planning to take some time off to take care of some personal matters such as changing the title on her home to defendant's name, helping Lydell apply for college admission and doing some sewing. Defendant also claims plaintiff was impeached with regard to her testimony concerning overtime work during 1977 because documents and plaintiff's subsequent testimony showed that plaintiff had worked more overtime hours than she had originally claimed. Conflicts in testimony do not necessarily amount to impeachment. Moreover, the question of impeachment bears directly on the credibility of the witnesses. Credibility is best determined by the trial court and we will not reverse the trial court's finding here in light of our conclusion that that finding is not against the manifest weight of the evidence. *Tandy v. Tandy* (1976), 42 Ill. App. 3d 87, 355 N.E.2d 585; *Farah v. Farah* (1975), 25 Ill. App. 3d 481, 323 N.E.2d 361.

· Defendant's claim that plaintiff did not show that defendant's actions were unprovoked is equally lacking in merit. Plaintiff testified that she gave defendant no cause to act as he did. She testified that she had no sexual relations with anyone other than defendant since their remarriage and that she did not kiss a man named Robert Strickland in an incident which defendant first mentioned under cross-examination. Lynne Christian testified that to her knowledge plaintiff never slept with another man during the marriage and Lydell Christian testified that to his knowledge plaintiff had no boyfriend during the marriage. Defendant attempts to make much of the fact that plaintiff admitted to having sexual relations with Robert Strickland prior to the parties' remarriage and that

Lynne had testified that she had answered the telephone when Strickland had called plaintiff during the time between the parties' marriages. However, plaintiff's actions when she was not married to defendant can hardly support defendant's charges of unfaithfulness during the marriage, especially when defendant has offered no direct evidence of plaintiff's alleged conduct while they were married.

Defendant did testify that plaintiff had become "belligerent" after two months of marriage, although the surrounding circumstances of plaintiff's behavior were not disclosed. Defendant further testified that he and plaintiff had had approximately 12 conversations about Strickland during their marriage. None of those conversations dealt with the kissing incident defendant had said he witnessed, and the three conversations about which defendant testified in detail consisted primarily of statements by defendant followed by little, if any, response on the part of plaintiff. In one conversation which occurred three months after their remarriage, defendant asked plaintiff "what was going on" with Strickland. Plaintiff replied it was none of defendant's business and if he didn't like it he should "do something about it." In another conversation, in November, defendant stated, he told plaintiff to tell Strickland that if he called again defendant "was going to go to his house and kick his door down and kick his butt," to which plaintiff answered "do it." In a third instance, in December, plaintiff had told defendant to "go to hell" and walked out of the room after defendant had asked her if Strickland had just dropped her off at home. Defendant offered no evidence to deny that he called plaintiff names or that plaintiff had become nervous, had lost weight and had sought medical treatment.

■ Contrary to defendant's contention, it is not necessary for plaintiff to show that each separate instance complained of was unprovoked. *Gregory v. Gregory* (2d Dist. 1974), 24 Ill. App. 3d 436, 321 N.E.2d 122, upon which defendant relies, found that the general statement that plaintiff had been considerate and generous during the marriage was not sufficient to show lack of provocation when the question was asked to establish the plaintiff's general conduct rather than to show lack of provocation. In the instant case, plaintiff testified directly that she had done nothing to provoke defendant's actions. The other cases cited by defendant are similarly distinguishable from the facts in the case before us. The record before us shows that defendant embarked on an abusive course of conduct which was unprovoked by plaintiff and which resulted in a loss of weight, the development of a nervous condition and the need for medical treatment which was alleviated after defendant moved out of the marital home. We therefore hold the judgment for divorce in favor of plaintiff, on the grounds of mental cruelty, was not against the manifest weight of the evidence.

## II.

Defendant next contends that the trial court abused its discretion in finding that defendant had made a gift of $1500 to his son. A valid gift requires the delivery of the property from the donor to the donee, with the intent to pass the title to the donee irrevocably, and with the donor relinquishing all present and future dominion and power over the property that constitutes the gift. *Pocius v. Fleck* (1958), 13 Ill. 2d 420, 150 N.E.2d 106; *In re Estate of Dzialowy* (1977), 53 Ill. App. 3d 585, 368 N.E.2d 780; *Bray v. Illinois National Bank* (4th Dist. 1976), 37 Ill. App. 3d 286, 345 N.E.2d 503.

At the trial, both parties testified that defendant had purchased a car for their son, Lydell Christian. Lydell had exclusive use of the car while defendant retained the title to the car and made all payments on the car. The down payment on the car was $1500, of which $500 had been contributed by Lydell with the balance being drawn from a savings account to which defendant had deposited money earned by both himself and his wife. Plaintiff, Lydell and Lynne Christian all testified that defendant had given the car to Lydell. Defendant, however, testified that the car had been given to Lydell "with conditions." The trial court found that defendant did not make a gift of the car to Lydell, but that he did make a gift of $1500 to him.

We agree that there was no gift of the car to Lydell, but conclude that the record discloses no evidence to support the trial court's finding that a gift of $1500 was intended. While it is clear from the record that defendant had at one time intended to give Lydell the car, it is equally obvious that defendant did not transfer all of his rights in the car to Lydell, for the title remained in defendant's name. Because the gift was never completed, it could not be enforced and was capable of revocation. (*Pocius v. Fleck; McCartney v. Ridgway* (1895), 160 Ill. 129, 43 N.E. 826.) Any intention of a gift was negated at trial when defendant testified that he would not pay for "any cars" for his son.

The record is entirely lacking in evidence to support the conclusion that a gift in any amount of money was ever made to Lydell by defendant. There was never a transfer of money from defendant to Lydell, and nowhere is there an expression of defendant's intent to make any such transfer. Plaintiff's contention that a presumption exists that a gift was intended because a parent and child are involved, citing *In re Estate of Nelson* (1971), 132 Ill. App. 2d 544, 270 N.E.2d 65, is totally without merit. It is the transfer of property from parent to child that gives rise to the presumption of the intent to make a gift and, as we have already noted, no transfer of money was ever made here.

Accordingly, we affirm the finding that defendant did not make a gift of the car to Lydell and reverse the award of $1500 to Lydell. The $1500

down payment on the car was made with $500 of Lydell's money and $1000 of money belonging jointly to the plaintiff and defendant. Defendant was declared sole owner of the car. The trial court should order that defendant return $500 to Lydell and pay $500 to plaintiff for her share in the down payment.

### III.

Defendant next contends that it was an abuse of discretion for the trial court to award attorney's fees for the trial proceedings, and alternatively, that those fees were excessive. The judgment of divorce provided that defendant pay plaintiff's attorney $2500 in trial fees, which included any temporary fees previously ordered. Defendant maintains that plaintiff was able to pay her own attorney's fees because she retained title to the marital home and had regular earnings sufficient to enable her to pay the fees.

■■ The granting of fees in a divorce case is proper when there is a showing of the financial inability of one party to pay the fees and the ability of the other to do so. (*Kaufman v. Kaufman* (1974), 22 Ill. App. 3d 1045, 318 N.E.2d 282; *Berg v. Berg* (1967), 85 Ill. App. 2d 98, 229 N.E.2d 282.) However, financial disability is not equated with destitution. Rather, it is sufficient to support the award of fees that the party seeking the fees would be stripped of his or her financial resources if required to pay. (*Kaufman v. Kaufman.*) The decision to require defendant to pay plaintiff's attorney's fees lies within the sound discretion of the trial court and that decision will not be disturbed unless the trial court's discretion is clearly abused. *Canady v. Canady* (1964), 30 Ill. 2d 440, 197 N.E.2d 42.

■■■ The court here had before it evidence of the financial status of both parties. The documents presented by both plaintiff and defendant showed that while defendant's monthly expenditures exceeded plaintiff's by slightly more than $200, the net pay of defendant averaged nearly $400 per week compared to plaintiff's average weekly take-home pay of $175. Furthermore, plaintiff's monthly expenditures were shown to be approximately equal to her total income, which included child support payments from defendant. The only other relevant asset was the marital home, which plaintiff had received in accordance with the divorce decree in the parties' first marriage. Plaintiff need not exhaust that one resource in order to pay her attorney's fees. Consequently, we find no abuse of discretion in the trial court's allowance of plaintiff's attorney's fees. However, we do agree with defendant's contention that the amount of trial fees awarded was excessive.

■■ In addition to the relative financial positions of the parties, the amount of fees to be allowed in a divorce proceeding depends on a

consideration of the skill and standing of the attorneys employed, the nature of the controversy, and the novelty and difficulty of the questions at issue; the amount and importance of the subject matter, especially from a family law standpoint; the degree of responsibility involved in the management of the case; the time and labor required; the usual and customary charge in the community; and the benefits resulting to the client. (See *Collins v. Collins* (1977), 47 Ill. App. 3d 258, 263, 361 N.E.2d 787, 790; *Greenbaum v. Greenbaum* (1973), 14 Ill. App. 3d 217, 302 N.E.2d 165.) The work for which the compensation is sought must be shown to be reasonably required and necessary for the proper performance of legal services under the circumstances. (*Gasperini v. Gasperini* (1978), 57 Ill. App. 3d 578, 373 N.E.2d 576; see *Moreau v. Moreau* (1973), 9 Ill. App. 3d 1008, 293 N.E.2d 680.) The fees allowed should be fair and just to all of the parties involved; namely, the attorney to be compensated, the client, and the person who is required to pay. *Gasperini v. Gasperini; Green v. Green* (1976), 41 Ill. App. 3d 154, 354 N.E.2d 661.

The application of these principles compels the conclusion that the amount of trial fees awarded in this case is excessive. There is no challenge as to the standing or skill of plaintiff's attorney. However, the issues in this case were uncomplicated, in spite of plaintiff's argument that she was forced to defend against a counterclaim. A counterclaim alone does not complicate the issues, and here no witnesses were presented by either party that were not necessitated by plaintiff's complaint. Furthermore, the only assets involved were the home to which plaintiff had and retained exclusive title, and the car, to which defendant had and retained exclusive title, and plaintiff testified that she sought no alimony. Other than child support, which defendant has never questioned, the total amount involved in the judgment of divorce was $4000, of which $2500 was for attorney's fees. The fees awarded in the instant case amount to more than 150% of the "benefits" resulting to the plaintiff, which of itself gives cause to question the fairness of the fees. Compare *Tippet v. Tippet* (2d Dist. 1978), 65 Ill. App. 3d 1018, 1021, 383 N.E.2d 13, 15.

Moreover, the record before us provides little, if any, support for fees in the amount awarded. Plaintiff's attorney sought fees for 40 hours of court time at the rate of $75 per hour and for 18 hours of office time at $35 per hour. We note that we have no occasion to review the rates of the fees, for defendant has not challenged those rates in any manner. No petition for attorney's fees was presented to the trial court, and the only matters in the record pertaining to the amount of time expended on plaintiff's behalf are found in her attorney's statements made prior to closing argument. While no specific hearing was had regarding fees, defendant's attorney

questioned plaintiff's counsel regarding the amount of time he claimed was required to pursue plaintiff's case.

Plaintiff's attorney bases his charge for 40 hours of court time on the two-day trial and 11 other court appearances. The trial itself took no more than nine hours, the court convening at 11:15 a.m. on one day and at 2 p.m. the other. On only one other occasion does it appear that a hearing was conducted, although we have no record to indicate the length of the proceeding. Of the remaining 10 court appearances, we find nothing in the record for three of the days, and two agreed continuances, the transfer for assignment and subsequent assignment of the case, the filing of two petitions for injunction, which were followed by *ex parte* orders, and one agreed order appear in the record for the other seven dates.

■ We conclude that the record supports fees for no more than 12 hours of court time, which at the rate of $75 per hour amounts to $900 for the two days at trial and the one other contested matter before the trial court. The time for the remaining 10 appearances is more appropriately billed as office time, for those appearances were merely formal and did not require the unique skill used in the course of a trial or other contested proceedings. *Gasperini v. Gasperini.*

Plaintiff's attorney has offered no documentation for the office time which he claims. The 18-hour request is based upon conferences and preparation of pleadings and documents. Again, the record discloses that there are relatively few documents and the pleadings are simple. There is nothing to show that the number of hours claimed was necessary to plaintiff's case. These considerations indicate that the total amount of time which should be allowed for office related work should be no more than 20 hours, which includes the 10 court appearances previously discussed. The amount allowable for office time at $35 per hour is therefore $700.

■■ In light of the foregoing principles, the total attorney's fees for the trial proceedings should be limited to $1600. Because plaintiff has already paid $200 to her attorneys, only $1400 may be assessed against defendant, and the judgment of divorce should be so modified.

## IV.

Finally, defendant contends that the award of plaintiff's attorney's fees for the defense of this appeal was an abuse of discretion, and in the alternative, that it was excessive. Following defendant's filing of the appeal from the judgment of divorce, plaintiff petitioned the court for attorney's fees in order to defend the appeal, seeking $7500 for a projected 100 hours of work at $75 per hour. The court initially awarded $4500 in fees, which, by order entered December 8, 1977, were reduced to $3750 on defendant's motion to vacate. Defendant has appealed, maintaining

that the award of fees was not authorized by statute, that there was no showing that plaintiff was unable to pay her own fees, and that defendant was unable to do so, and that, alternatively, the $3750 award was excessive.

Defendant first challenges the authority of the trial court to award attorney's fees on appeal because the question was governed by the Divorce Act which, at the time of the judgment, did not provide for the award of appeal fees in a divorce action. Plaintiff contends, however, that the matter of appeal fees in this case is governed by the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, pars. 101 through 802), which went into effect October 1, 1977. While we agree with plaintiff's contention that the Marriage and Dissolution of Marriage Act applies, we find that it did not confer authority upon the trial court to award fees on appeal in the instant case.

Plaintiff's complaint for divorce was filed in December 1976 under the Divorce Act. The Act was still in effect both when the judgment of divorce was entered on August 17, 1977, and when defendant filed his appeal from that judgment on August 31, 1977. Plaintiff's petition for attorney's fees on appeal was filed on September 15, 1977, and was still pending when the Marriage and Dissolution of Marriage Act became effective on October 1, 1977. The order for attorney's fees was entered on October 18, 1977, and was modified by the order of December 8, 1977.

■■ Section 801(b) of the Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 801(b)) provides in pertinent part:

> "This Act applies to all pending actions and proceedings commenced prior to its effective date with respect to issues on which a judgment has not been entered."

Therefore, the issue of attorney's fees on appeal, although raised before the effective date of the new Act, had not yet been decided by the court when the Act went into effect and the issue is therefore governed by the provisions of the new Act.

■■ However, contrary to plaintiff's claim, the provisions of the new Act, while generally authorizing attorney's fees on appeal, do not allow the award of such fees under the facts of this case. Section 508(a)(3) of the Act (Ill. Rev. Stat. 1977, ch. 40, par. 508(a)(3)) provides:

> "(a) The court from time to time, after due notice and hearing, and after considering the financial resources of the parties, may order either spouse to pay a reasonable amount for his own costs and attorney's fees and for the costs and attorney's fees necessarily incurred by the other spouse, which award shall be made in connection with the following:

* * *

(3) The defense of an appeal of *any order or judgment under this Act,* including the defense of appeals of post-judgment orders." (Emphasis added.)

The appeal for which plaintiff seeks attorney's fees is the appeal from the judgment for divorce entered on August 17, 1977, before the new Act's effective date. Clearly, then, plaintiff was not seeking fees for the defense of an appeal of a judgment "under this Act." The appeal was instead from a judgment under the Divorce Act.

During the time that the parties' divorce action was pending in the trial court, there was no statutory provision which allowed attorney's fees for the appeal of a divorce judgment. Prior to October 1, 1976, section 15 of the Divorce Act contained the following provision:

"In case of appeal by the husband or wife, the court in which the decree or order is rendered may grant and enforce the payment of such money for her or his defense and such equitable alimony during the pendency of the appeal as to such court shall seem reasonable and proper." (Ill. Rev. Stat. 1975, ch. 40, par. 16.)

Section 15 was amended by Public Act 79—1360, effective October 1, 1976, the amendment deleting the above-quoted provision. No other provision for attorney's fees replaced the deleted portion. (Ill. Rev. Stat. 1976 Supp., ch. 40, par. 16.) There being no statutory authority for the court to award attorney's fees on this appeal, it was error for the court to do so. The responsibility for attorney's fees on this appeal should remain with the individual parties. (*McArdle v. McArdle* (3d Dist. 1977), 55 Ill. App. 3d 829, 837, 370 N.E.2d 1309, 1315.) Because the trial court was not authorized to award appeal fees to plaintiff's attorney, we need not consider defendant's other contentions regarding the fees.

## V.

In summary, the provision of the judgment of divorce granting plaintiff a divorce is affirmed; the provision relating to the vehicle used by Lydell is affirmed as to the declaration of ownership in defendant and reversed as to the payment of $1500; the amount of $2500 for trial fees is vacated; and the cause is remanded with directions to modify the judgment not inconsistent with this opinion. The order entered December 8, 1977, is reversed.

Judgment affirmed in part, reversed in part and remanded.

Order reversed.

SULLIVAN, P. J., and WILSON, J., concur.